THE STATE EX REL. CARR, APPELLANT, *v.* LONDON
CORRECTIONAL INSTITUTION, APPELLEE.

[Cite as *State ex rel. Carr v. London Corr. Inst.,*
144 Ohio St.3d 211, 2015-Ohio-2363.]

(No. 2014–0596—Submitted February 3, 2015—Decided June 18, 2015.)

**Per Curiam.**

{¶ 1} We reverse the Twelfth District Court of Appeals' denial of a writ of mandamus in this public-records case. The case was brought by relator-appellant, James M. Carr Sr., an inmate at London Correctional Institution ("LCI"). Carr made several public-records requests of LCI that were denied; his last request was granted. He filed an action in mandamus in the Twelfth District to obtain the documents that he had not received. He also sought statutory damages under R.C. 149.43, the Public Records Act ("PRA"). The court of appeals granted LCI's motion for summary judgment and denied Carr a writ. It also denied his claim for statutory damages.

{¶ 2} Because LCI has not shown that Carr's requests were ambiguous, overbroad, or unduly burdensome, and because Carr complied with the requirements of R.C. 149.43(C)(1), we reverse, grant a writ of mandamus, and award Carr statutory damages and court costs.

*Facts*

{¶ 3} In January 2012, the staff in LCI's mailroom was replaced with a group of new, contract employees. As a result, one of the prison chaplains, Chaplain Cahill, drafted a memorandum listing ministries that regularly send religious material to inmates and sent it to the mailroom supervisors to assist the mailroom staff in screening religious materials for unauthorized material and contraband.

{¶ 4} In late February 2012, Carr became aware of the memorandum. He went to the mailroom window and asked to see a copy. The employee working at the mailroom window verified that the memorandum existed but refused to let Carr see the copy in the mailroom's possession and suggested that Carr see Cahill to obtain a copy. Carr immediately went to see Cahill and requested a copy of the memorandum. Cahill refused to allow Carr to see a copy of the memorandum and refused to provide a copy. Carr told Cahill that he would request a copy from Vickey Justus, the warden's administrative assistant, whose duties included responding to public-records requests from inmates.

{¶ 5} On March 5, 2012, Carr hand-delivered a public-records request to DeCarlo Blackwell, the inspector of institutional services, to be delivered to Justus. The request stated:

> Dear Mrs. Justus,
>
> This is a public records request pursuant to section 149.43 of the Ohio Revised Code, and DRC policy 07–ORD–02.
>
> I went to see Chaplain Cahill on 2/28/2012, and requested that Chaplain Cahill provide me with a copy of an interoffice memo sent from his office to the mail room. You can contact Chaplain Cahill to find out exactly the memo I am speaking of. I request a copy of the following record:
>
> I request a copy of the inter-office memo between the Chaplains office and the mail room. This memo was sent during January or February of 2012. This memo contains information related to the religious ministries regularly dealt with by the Chaplains office. This memo was sent to the mail room to assist the mail room with the religious material received by the institution.
>
> This public records request was hand delivered to the Institutional Inspector, Mr. Blackwell on 3/5/2012
>
> James M. Carr Sr., # 459–931

On March 8, Justus denied this request, stating that it was "ambiguous, overbroad, and unduly burdensome to produce."

{¶ 6} On March 15, 2012, Carr hand-delivered another public-records request to Blackwell for Justus. That request stated:

> I request copies of all e-mails and interoffice memo's sent from Chaplain Cahill, to the mailroom (including it's supervisor's), during the months of January and February for 2012. To be clear, my request is only for e-

mails and interoffice memo's sent from Chaplain Cahill to the mailroom (including its supervisor's) for the months of January and February of 2012.

On April 4, 2012, Justus denied the March 15 request, again stating that it was "ambiguous, overbroad, and unduly burdensome to produce."

{¶ 7} On March 21, Carr sent a written request to Cahill for the date on which the memorandum had been sent. On March 26, Cahill responded that he could not tell Carr the date of the original memorandum but that the most recent version had been sent on March 5, 2012.

{¶ 8} On April 10, 2012, Carr hand-delivered another public-records request to Blackwell for Justus. That request was for all e-mails and interoffice memos sent by Cahill to the mailroom during the month of February 2012. On April 19, Justus denied this request, once again stating that it was "ambiguous, overbroad, and unduly burdensome to produce."

{¶ 9} Also on April 10, 2012, Carr delivered a second request to Blackwell that sought a copy of "all interoffice memos and e-mails sent by Chaplain Cahill to the mail room or it's supervisors on 3/5/2012" as well as a current copy of LCI's records-retention schedule. On April 19, Justus responded that Carr needed to submit a cash slip to pay for the copies. Once issues with the cash amount were resolved, Justus provided the records requested in Carr's second April 10, 2012 request.

{¶ 10} Carr filed various internal forms and appeals within the prison in an effort to get the additional documents he had requested, but the records requested in the March 5, March 15, and first April 10, 2012 requests were still not provided.

{¶ 11} On October 18, 2012, Carr filed an action in mandamus in the Twelfth District Court of Appeals seeking a writ of mandamus ordering LCI to provide the documents requested in Carr's March 5, March 15, and first April 10, 2012 requests.

{¶ 12} In the court of appeals, both sides filed motions for summary judgment. As an exhibit to its motion, which was docketed on March 5, 2013, LCI finally provided to Carr a copy of the original memorandum, dated January 30, 2012, from Chaplain Cahill to the mailroom. The court granted summary judgment to LCI as to the March 5, 2012 request, finding that it was properly denied as being ambiguous, but denied summary judgment as to the other requests and directed the parties to file briefs. Both parties filed briefs, and on March 31, 2014, the court of appeals issued a decision ruling that Carr's March 15, 2012 request and first April 10, 2012 request were properly denied as being overbroad. The court denied a writ and denied statutory damages. Carr filed a notice of appeal.

*Analysis*

{¶ 13} We reverse the judgment of the court of appeals and grant a writ of mandamus because Carr's requests were not ambiguous or overbroad under the PRA. Because Carr complied with the requirements of R.C. 149.43(C)(1) and because withholding the document requested in his March 5, 2012 request was not reasonable, we also award statutory damages. Because we issue a writ and because Carr complied with R.C. 149.43(C)(1), we also award Carr court costs under R.C. 149.43(C)(2) and remand to the court of appeals for a determination of the amount to be awarded as costs.

**Affidavit required by R.C. 2969.25(A)**

{¶ 14} When an inmate files a civil action, he must comply with several statutes, including R.C. 2969.25(A), which requires that he file an affidavit containing a description of each civil action or appeal that he has filed in the previous five years. LCI claimed below that Carr's affidavit is deficient. The court of appeals ignored this argument and proceeded to the merits; LCI asserts it again here.

{¶ 15} While Carr's affidavit might not be a model, it satisfies the statute. LCI first argues that Carr's affidavit states only that the listed cases are those he has filed against government agencies, yet the statute requires him to list all of the civil cases he has filed, not just those against the government. But LCI points to no evidence that Carr has filed any civil actions other than the ones he listed.

{¶ 16} LCI next asserts that Carr did not name each party in the listed cases. But the captions of the cases list the parties. A separate listing might be preferable, but the information appears in the affidavit, and therefore the requirements of the statute are met.

{¶ 17} Finally, LCI claims that Carr does not include the case name for his last-listed case. However, that case is described as an earlier version of this mandamus action. Again, while not ideal, the court can infer that the case name and parties are the same as those in the current case.

{¶ 18} Carr's affidavit is sufficient under the statute.

**Mandamus and public records**

{¶ 19} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). Although "[w]e construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records," *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office,* 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6, the

relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence, *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

{¶ 20} To be entitled to a writ of mandamus, Carr must establish a clear legal right to the requested relief and a clear legal duty on the part of LCI to provide it. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

### The March 5, 2012 request

{¶ 21} The court below found that Carr's March 5, 2012 request was properly denied as being ambiguous. LCI argues that the request was ambiguous in that Justus would have been required to do research to determine what record Carr was requesting.

{¶ 22} However, Carr's request identified a particular record authored by a named individual, specifying to whom it was sent and a time frame during which it was sent. He provided unrefuted evidence by way of his affidavit that both Chaplain Cahill and an employee of the mailroom were able to verify the existence of the record. Expecting Justus to simply track down the chaplain or someone in the mailroom to get the document is not "research" within the meaning of the PRA. Rather, to constitute improper research, a record request must require the government agency to either search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records. *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30–31, 35; *State ex rel. Kerner v. State Teachers Retirement Bd.,* 82 Ohio St.3d 273, 274, 695 N.E.2d 256 (1998).

{¶ 23} While Carr did not provide a precise date on which the requested memo had been sent, we have never required that level of specificity when a document is otherwise reasonably identifiable:

> [W]e have never held that in order to constitute a viable request, the request must specify the author and date of the records requested. Although this may be helpful in identifying the requested records, the failure to do so does not automatically result in an improper request for public records, particularly where, as here, it is evident that the public office was aware of the specific records requested. We do not require perfection in public-records requests.

*Morgan* at ¶ 37, citing *State ex rel. Cater v. N. Olmsted,* 69 Ohio St.3d 315, 320, 631 N.E.2d 1048 (1994).

{¶ 24} The court of appeals erred in holding that the March 5, 2012 request was ambiguous.

**The March 15, 2012 request**

{¶ 25} The court of appeals found that Carr's March 15, 2012 public-records request was properly denied as being overbroad. Although the March 15 request is broader than the March 5 request in that it asks for more than one document, it asks only for communications from one individual to an identified department in the prison over a two-month period.

{¶ 26} The cases cited by LCI to support its argument that the request was overbroad are distinguishable. Unlike in *State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 755, 577 N.E.2d 444 (10th Dist.1989), there is no indication that the request is not readily amenable to the method of retrieval used by the government agency.

{¶ 27} Unlike in *State ex rel. Zidonis v. Columbus State Community College*, 10th Dist. Franklin No. 10AP–961, 2011-Ohio-6817, 2011 WL 6930336, ¶ 59, Carr did not make a request for extremely broad categories of records, such as "litigation files" or "complaint files," but rather made a request for communications between a specific individual and a specific office within a reasonably defined time frame.

{¶ 28} Carr's request is not for anything approaching the scope of the request in *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 19, which was for the entire body of e-mails, texts, and written correspondence sent and received by a state representative during her entire term in office. Carr's request, unlike Glasgow's, is not a "complete duplication" of anyone's files. *See id.* Nor does Carr's request approach the overbroad request in *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 314, 750 N.E.2d 156 (2001), which sought " 'any and all records generated * * * containing any reference whatsoever to' " the requestor. (Ellipses sic.) LCI has not shown that the chaplain's office sent vast numbers of memos and e-mails to the prison mailroom during January and February 2012.

{¶ 29} The court of appeals erred in holding that the March 15, 2012 request was overbroad.

**The April 10, 2012 request**

{¶ 30} The court of appeals also found that Carr's first April 10, 2012 request was properly denied as being overbroad. That request was similar to Carr's March 15 request except that it requested all interoffice memos and e-mails sent by Chaplain Cahill to the mailroom during only one month—February 2012— instead of two. Thus, the first April 10, 2012 request covers a narrower time frame than the March 15, 2012 request.

{¶ 31} The court of appeals erred in holding that the first April 10, 2012 request was overbroad.

**Damages and costs**

{¶ 32} R.C. 149.43(C)(1) allows, under certain circumstances, awards of damages for requestors whose public-records requests have been denied in violation of the PRA:

> If a requestor transmits a written request by hand delivery or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requestor shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

{¶ 33} Thus, for a public-records requestor to be entitled to damages, the requestor must have made the request in writing by hand delivery or certified mail, the request must have fairly described the public record or records, and the public office must have failed to comply with an obligation in the public-records law.

{¶ 34} A reviewing court examining the denial of an award of damages under the PRA must determine whether the court below abused its discretion. *State ex rel. Patton v. Rhodes*, 129 Ohio St.3d 182, 2011-Ohio-3093, 950 N.E.2d 965, ¶ 12, citing *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 1, 47.

{¶ 35} The court of appeals denied damages in this case because, it reasoned, once Carr received the memo sent on March 5, 2012, from the chaplain's office to the mailroom, Carr's request had been fulfilled, and therefore no violation of the PRA occurred.

{¶ 36} In support of the court of appeals' decision, LCI cites *State ex rel. Doe v. Register*, 12th Dist. Clermont No. CA2008–08–081, 2009-Ohio-2448, 2009 WL 1456485, in which the Twelfth District held that the provision of official meeting minutes satisfied a request for draft meeting minutes where the two sets of minutes were identical, but that case is distinguishable.

{¶ 37} First, the March 5 memo differs from the prior version of the memo in that the name of the sender and the date are different. Second, unlike in *Register*, the earlier version of the memo is not a "draft" that was later finalized.

Here, the earlier version was sent by the chaplain to the mailroom and apparently acted on by the mailroom personnel; it was, and is, a finalized public record. Moreover, a draft is not necessarily excluded from the definition of a public record. *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 232–234, 729 N.E.2d 1182 (2000) (requestor entitled to attorney fees when city delayed in providing her with draft of collective-bargaining agreement). The differences between the various versions of the memo may be slight, but they are differences, and Carr is entitled to copies of all the public records he properly requested.

{¶ 38} Nor should damages be denied because the purported reason for Carr's request was to use the memo in a lawsuit alleging discrimination by the prison against his religion. The purpose for which a public record is requested is irrelevant. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 10, citing *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186, 610 N.E.2d 997 (1993), syllabus ("A person may inspect and copy a 'public record,' as defined in R.C. 149.43(A), irrespective of his or her purpose for doing so"), and *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 45 (purpose behind request to "inspect and copy public records is irrelevant"). Carr's supposed purpose for requesting the record cannot be used to deny his request for a prior version of the record. LCI improperly withheld public records that were fairly described by Carr.

{¶ 39} The next consideration is whether Carr's delivery of his requests to Inspector Blackwell rather than to Justus means that the request was not transmitted by "hand delivery" within the meaning of R.C. 149.43(C)(1).

{¶ 40} Neither the statute nor case law indicates exactly what "hand delivery" means. LCI argues that Carr did not hand-deliver the requests because he gave them to Inspector Blackwell rather than to Justus, whom he knew was responsible for responding to such requests. Carr responds that he is not allowed into the restricted area where Justus works and therefore could not have hand-delivered the requests to her. We find that Carr's hand delivery of the requests to a prison official fulfilled the delivery requirement of the statute.

{¶ 41} That does not end the analysis, however. Under the PRA, a court may reduce or not award statutory damages if the court determines both of the following:

(a) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public records that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public

records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with division (B) of this section; [and]

(b) That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

R.C. 149.43(C)(1). Thus, if we find that LCI's refusal to turn over the requested records was reasonable under previous case law and upheld an important public policy, we could decide not to award damages.

{¶ 42} As to the March 5, 2012 request, no reasonable public employee responsible for public records could have thought that a request for a single document was overbroad or burdensome. And because Carr's request identified the author and recipient of the document within the prison and the approximate time the document was transmitted, no reasonable public employee responsible for public records could have thought that the request was ambiguous.

{¶ 43} LCI asserts that a prison's denial of an overbroad public-records request is consistent with public-policy concerns and therefore justifies a reduction of damages under R.C. 149.43(C)(1)(b). The case it cites for this proposition is inapposite here. *State ex rel. Dehler v. Kelly*, 11th Dist. Trumbull No. 2009-T-0084, 2010-Ohio-3053, 2010 WL 2636549, ¶ 47, is concerned with overbroad requests interfering with "the integrity of the recordkeeping process." *See also State ex rel. Dehler v. Kelly*, 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828, ¶ 3 ("the prison officials established that permitting Dehler to inspect the requested records might have unreasonably interfered with the discharge of their duties"). LCI has provided *no evidence* that the production of the documents at issue here would have interfered with the integrity of its recordkeeping process or with the discharge of its employees' duties.

{¶ 44} But even if LCI had provided evidence to support its public-policy argument regarding overbroad requests, Carr would be entitled to damages. LCI did not fulfill Carr's March 5, 2012 request for a single memorandum sent in January 2012 until March 5, 2013, when LCI provided the memorandum as an exhibit to its motion for summary judgment in the court of appeals in this case. R.C. 149.43(C)(1) fixes the amount of statutory damages at "one hundred dollars for each business day during which the public office * * * failed to comply," up to a maximum award of $1,000. As LCI failed to produce the document for a year's

worth of business days, we hold that the court of appeals abused its discretion in denying statutory damages, and we order LCI to pay Carr $1,000 in damages.

{¶ 45} R.C. 149.43(C)(2)(a) provides that if a court issues a writ of mandamus ordering a public office to comply with the PRA and determines that the circumstances set forth in R.C. 149.43(C)(1) exist, the court "shall determine and award the relator all court costs." As we are issuing a writ of mandamus ordering LCI to comply with the PRA, and as Carr complied with the requirements in R.C. 149.43(C)(1), we award Carr court costs. We remand and order the court of appeals to determine the amount to be awarded as costs.

**Miscellaneous motions**

{¶ 46} Carr also appeals the court of appeals' rulings on a number of procedural motions. However, because we reverse on the merits, the issues relating to those motions are moot.

*Conclusion*

{¶ 47} We therefore reverse the judgment of the court of appeals and issue a writ of mandamus ordering LCI to produce any records requested by Carr on March 5, 2012, March 15, 2012, and April 10, 2012, that have not yet been produced. We also reverse the court of appeals' denial of statutory damages and award damages to Carr under R.C. 149.43(C)(1) in the amount of $1,000. Finally, we award court costs to Carr under R.C. 149.43(C)(2)(a) and remand the case to the court of appeals to determine the amount to be awarded as costs.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., dissents and would adopt the judgment of the court of appeals.

James M. Carr Sr., pro se.

Michael DeWine, Attorney General, and Caitlyn A. Nestleroth, Assistant Attorney General, for appellee.