[Cite as *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, 2017-Ohio-4248.]

| | |
|---|---|
| GANNETT GP MEDIA, INC., D/B/A, THE CINCINNATI ENQUIRER<br><br>        Requester<br><br>        v.<br><br>OHIO DEPARTMENT OF PUBLIC SAFETY<br><br>        Respondent | Case No. 2017-00051-PQ<br><br>Judge Patrick M. McGrath<br><br><u>DECISION</u> |

**{¶1}** Before the court are (1) objections filed by requester Gannett GP Media, Inc., dba, The Cincinnati Enquirer (GP Media) to Special Master Jeffery W. Clark's report and recommendation issued on April 24, 2017, (2) objections filed by respondent Ohio Department of Public Safety (ODPS) to Special Master Clark's report and recommendation of April 24, 2017, and (3) a motion to strike affidavits and exhibits filed by GP Media.

**{¶2}** As discussed below, the court determines that GP Media's motion to strike should be granted, that GP Media's objections should be overruled, and that ODPS's objections should be overruled. The court further determines that Special Master Clark's report and recommendation should be adopted, including the special master's findings of fact and conclusions of law contained in the report and recommendation.

## **Background**

**{¶3}** On January 17, 2017, GP Media filed a complaint against ODPS that alleged a denial of access to public records in violation of R.C. 149.43(B). The court referred the case to mediation. After mediation failed to resolve all disputed issues, the court returned the case to the docket of Special Master Jeffery W. Clark. On April 24, 2017, Special Master Clark issued a report and recommendation. In his report and

recommendation Special Master Clark noted that GP Media made a public-records request to ODPS for:

> 1. A list of the names and ranks of the 37 Ohio troopers sent to North Dakota via an agreement with the Emergency Managemet [sic] Assistance Compact (EMAC).
>
> 2. Any and all communication issued or received by any employee of the Ohio State Highway Patrol, regarding the deployment of these officers.
>
> 3. Any document that outlines the agreement between the EMAC and the OSHP regarding the action of sending the 37 troopers.
>
> 4. Any OSHP bylaws or procedures which govern agreements with EMAC.

(Report and Recommendation, 2.) In the conclusion of his report and recommendation Special Master Clark made findings, determinations, and recommendations, stating:

> a. Upon consideration of the pleadings and attachments, I find that GP Media has failed to establish by clear and convincing evidence that DPS violated division (B) of R.C. 149.43 when it denied GP Media's Request No. 2 for all communication issued or received by all employees of the OSHP regarding the deployment of Troopers to North Dakota in 2016. The request was ambiguous, overly broad, and required a search or research instead of reasonably identifying the records sought. Accordingly, I recommend that the court issue an order DENYING GP Media's claim for relief based on Request No. 2.
>
> b. I further find that GP Media has failed to establish by clear and convincing evidence that DPS violated division (B) of R.C. 149.43 when it denied GP Media's Request No. 4 for any OSHP bylaws or procedures which govern agreements with EMAC. DPS presented unrebutted evidence that no records responsive to this request exist. Accordingly, I recommend that the court issue an order DENYING GP Media's claim for relief based on Request No. 4.
>
> c. I further find that GP Media has established by clear and convincing evidence that DPS violated division (B) of R.C. 149.43 when, following their return from deployment, it withheld the names of the 37 Troopers deployed to North Dakota. I further find that GP Media has

established by clear and convincing evidence that DPS violated division (B) of R.C. 149.43 when it withheld the EMAC Agreement/REQ-A in its entirety instead of redacting only the portions that meet the definition of "security record" in R.C. 149.433(A)(1). Accordingly, I recommend that the court issue an order GRANTING GP Media's claim for relief based on Request No. 1, and GRANTING IN PART GP Media's claim for relief based on Request No. 3, and which 1) directs the DPS to provide GP Media with a copy of the EMAC Agreement/REQ-A, subject to redaction of items indicated in the ATTACHMENT hereto, and 2) provides that GP Media is entitled to recover from DPS the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

After Special Master Clark issued his report and recommendation, both GP Media and ODPS challenged the report and recommendation by filing objections on May 8, 2017, and May 5, 2017, respectively. With its objections, ODPS filed additional evidence— i.e., affidavits supplementing previously submitted affidavits, and an updated report of social media threats compiled by a criminal intelligence analyst with the North Dakota State and Local Intelligence Center pertaining to a dispute regarding a pipeline in North Dakota. Both GP Media and ODPS responded to the filed objections, with GP Media filing a response on May 15, 2017, and ODPS filing a response on May 19, 2017.

{¶4} On May 9, 2017, GP Media moved the court to issue an order striking the affidavits and exhibits attached to ODPS's objections. On May 19, 2017, ODPS filed a response to GP Media's motion to strike. Five days later—on May 24, 2017—GP Media moved the court for leave to file a reply to ODPS's response to GP Media's motion to strike. The court denied GP Media's motion for leave to file a reply.

<u>Discussion</u>

### I. GP Media's Motion to Strike

{¶5} GP Media asks the court to issue an order striking the affidavits and exhibits that ODPS attached to its objections. GP Media asserts that the affidavits "are made up primarily of inadmissible hearsay," that the affidavit of Cody Larson "in fact contains, with one exception, materials that existed before the ODPS submitted its response on

March 8," and the affidavits "discuss irrelevant information that is not probative and is introduced solely for its inflammatory content."

{¶6} In response, ODPS maintains that it "is within the discretion of the Court to consider supplemental affidavits and exhibits, and the statute governing this litigation, R.C. 2743.75, does not prohibit a party from filing supplemental information with objection(s)." ODPS contends that supplemental affidavits "are necessary based on the burden of proof set forth by the Special Master, and reiterate and update evidence that demonstrated a perceived risk of substantial harm to the Troopers has continued since the Troopers' return to Ohio." ODPS maintains that the supplemental affidavits "contain the witnesses' personal knowledge and expert opinions, which is not 'hearsay,' irrelevant, or speculative evidence." In an attendant memorandum in support, relying on Civ.R. 53(D)(4)(d), ODPS asserts that this court may consider additional evidence with a party's objections to a report and recommendation.

{¶7} Civ.R. 53(D)(4)(d) pertains to actions that a court may take on objections to a magistrate's decision. It provides: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, *the court may hear additional evidence but may refuse to do so* unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." (Emphasis added.) Thus, even if Civ.R. 53(D)(4) were to apply in this circumstance, it is within this court's discretion whether to consider the evidence that ODPS has proffered with its objections.

{¶8} It is true that R.C. 2743.75 does not contain a provision addressing whether a party who objects to a special master's report and recommendation may file supplemental evidence with the party's objections. However, when a party in a public-

records dispute timely objects to a special master's report and recommendation, this court, in accordance with R.C. 2743.75(F)(2), is required to issue a final order that adopts, modifies, or rejects the special master's report and recommendation. *See* R.C. 2743.75(F)(2). In such a circumstance, R.C. 2743.75(F)(2) requires this court to function as a reviewing court for the purpose of determining objections before it. In *State v. Hooks*, 92 Ohio St.3d 83, 83-84, 748 N.E.2d 528 (2001), the Ohio Supreme Court stated that "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500." The court concludes that the principle discussed in *Hooks* applies in this instance. Applying this principle, this court therefore should not add matter to the record before it that was not part of the record before the special master, and then decide a party's objection or objections to the special master's report and recommendation on the basis of the new matter. The court finds that, in this instance, by filing additional evidence with its objections and asking the court to consider this additional evidence, ODPS improperly attempts to add matter to the record that was not part of the proceedings before the special master, and it improperly asks the court to decide the parties' objections, at least in part, on the basis of this new matter. The court concludes that GP Media's motion to strike should be granted and that attachments to ODPS's objections that were not before the special master should be stricken.

## II. GP Media's and ODPS's Objections

{¶9} R.C. 2743.75(F)(2) governs objections to a report and recommendation of a special master of this court related to a dispute alleging a denial of access to public records. Pursuant to R.C. 2743.75(F)(2):

> d. Either party may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested. Any objection to the report

and recommendation shall be specific and state with particularity all grounds for the objection. If neither party timely objects, the court of claims shall promptly issue a final order adopting the report and recommendation, unless it determines that there is an error of law or other defect evident on the face of the report and recommendation. If either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested. The court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation.

Upon review, the court finds that GP Media's and ODPS's objections and the responses filed by GP Media and ODPS to the other party's objections are timely filed. Because the parties' objections and responses are timely filed, the court shall consider them.

### A. GP Media's Two Objections

{¶10} GP Media objects to (1) the special master's "conclusion that Requester's public records request for '[a]ny and all communication issued or received by any employee of the Ohio State Highway Patrol, regarding the deployment of these officers' * * * was not 'a proper request that reasonably identified the records sought' under R.C. 149.43(B)" (footnote omitted), and (2) the special master's finding that "ODPS complied with its obligation under R.C. 149.43(B)(2) to provide it with information regarding 'the manner in which records are maintained…and accessed in the ordinary course' of ODPS's duties."

### 1. GP Media's Objection No. 1

{¶11} By its first objection, GP Media challenges the special master's determination that GP Media "has failed to show by clear and convincing evidence that Request No. 2 was a proper request that reasonably identified the records sought." (Report and Recommendation, 8.) GP Media urges that the special master's determination "is not in accord with the Supreme Court's precedent governing the degree of specificity required in a request, and is thus erroneous as a matter of law. *See, e.g., State ex rel. Carr v. London Corr. Inst.* ("*Carr*"), 144 Ohio St.3d 211, 2015-

Ohio-2363, 41 N.E.3d 1203 (holding that inmate's public records requests were not overly broad or ambiguous because there was 'no indication that the request [was] not readily amenable to the method of retrieval used by the government agency')."

{¶12} In support of its first objection, GP Media calls the court's attention to *Carr*. In that case, James M. Carr, Sr., an inmate, made several public-records requests of London Correctional Institution (LCI) that, except for one, LCI denied. Carr filed an action in mandamus in an appellate court; LCI moved for summary judgment; the appellate court granted LCI's motion for summary judgment; and the appellate court denied Carr's request for a writ of mandamus. Carr appealed to the Ohio Supreme Court. On appeal, the Ohio Supreme Court reversed the appellate court's judgment, issued a writ of mandamus, and remanded the cause. *Carr* at ¶ 47. In a per curiam opinion the Supreme Court of Ohio determined that LCI had not shown that Carr's requests were ambiguous, overbroad, or unduly burdensome and that Carr complied with requirements of R.C. 149.43(C)(1). *Carr* at ¶ 2.

{¶13} In reaching a determination that one of Carr's requests was not ambiguous, the Supreme Court stated: "Carr's request identified a particular record authored by a named individual, specifying to whom it was sent and a time frame during which it was sent. He provided unrefuted evidence by way of his affidavit that both Chaplain Cahill and an employee of the mailroom were able to verify the existence of the record." *Carr* at ¶ 22. And in determining that another request was not overbroad, the Supreme Court stated: "Carr did not make a request for extremely broad categories of records, such as 'litigation files' or 'complaint files,' but rather made a request for communications between a specific individual and a specific office within a reasonably defined time frame." *Carr* at ¶ 27.

{¶14} Here, in its second request GP Media sought: "Any and all communication issued or received by any employee of the Ohio State Highway Patrol, regarding the deployment of these officers." GP Media's second request is distinguishable from *Carr*

because, unlike Carr's request, GP Media has not identified a particular record authored by a named individual, specifying to whom it was sent and a time frame during which it was sent. Also, unlike the requester in *Carr*, by its second request GP Media has not made a request for communications between a specific individual and a specific office within a reasonably defined time frame. The court finds GP Media's first objection is unpersuasive. The court overrules GP Media's first objection.

## 2. GP Media's Objection No. 2

{¶15} In its second objection, GP Media "objects to the Special Master's finding that ODPS complied with its obligation under R.C. 149.43(B)(2) to provide it with information regarding 'the manner in which records are maintained…and accessed in the ordinary course' of ODPS's duties. (Report at 7.)" GP Media states: "Other than offering to 'help' Requester narrow the request, ODPS did not provide Requester with information about how it maintained records about the North Dakota deployment." Thus, by its second objection, GP Media effectively objects to a factual finding of the special master. *See generally Black's Law Dictionary* 749 (10th Ed. 2014) (finding of fact is a "determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record * * *").

{¶16} A special master—also termed magistrate; referee; commissioner; or hearing officer—is defined as a judicial officer, usually an attorney, "who serves in an appointive capacity at the pleasure of an appointing judge, and whose actions and decisions are reviewed by that judge." *Black's Law Dictionary*, supra at 1257. As a matter of definition, the terms special master and magistrate therefore are equivalent. In *Siegel v. Univ. of Cincinnati College of Medicine*, 2015-Ohio-441, 28 N.E.3d 612, ¶ 12 (10th Dist.) the Tenth District Court of Appeals discussed the standard that applies to this court's review of a magistrate's determination, stating:

> e. "A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties." *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-5632, ¶ 38. The Court of

Claims still must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The court retains the ultimate authority and responsibility over the magistrate's findings and rulings. *Hartt v. Munobe*, 67 Ohio St.3d 3, 5-6 (1993). Appellants' suggestion that a magistrate, whether by individual capacity of the magistrate or by authorization from the court, is incapable of deciding the facts and weighing the credibility of witnesses, lacks merit. In any event, "the court remains the ultimate finder of fact, even on matters of credibility." *DeWine* at ¶ 37. "Although the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions." *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 15, citing *DeSantis v. Soller*, 70 Ohio App.3d 226, 233 (10th Dist.1990). * * *.

And in *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 45, the Ohio Supreme Court stated: "It is well settled that ' "[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' *State v. Amburgey* (1987), 33 Ohio St.3d 115, 117, 515 N.E.2d 925, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273." Based on *Siegel* and *In re A.J.S.* it follows therefore that a special master in a public-records dispute under R.C. 2743.75 is capable of deciding the facts and weighing the evidence, and the court may give weight to a special master's assessment of the credibility of the evidence before him or her.

{¶17} Pursuant to R.C. 149.43(B)(2), if a requester "makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by

the public office and accessed in the ordinary course of the public office's or person's duties." Here, Special Master Clark described ODPS's interactions with GP Media, noting:

> f. After DPS exercised its right to deny Request No. 2 as ambiguous and overly broad, it invited GP Media to revise the request, and repeatedly offered to discuss the request to help GP Media clarify the records sought. DPS advised that it did not have the capability to search department email using the terms given in Request No. 2. (Casey letter of December 2, 2016.) DPS voluntarily provided GP Media with 39 pages of records previously produced to a different requester in response to a narrower request. (Compl. Attachments, pp. 5-43.) DPS's quotation of this narrower request provided an example to GP Media of reasonable identification of email records, and the court takes notice that requester was assisted in correspondence by experienced public records legal counsel. I conclude that DPS sufficiently met its obligation to provide GP Media with the opportunity and information to revise this request.

(Report and Recommendation, 8.)

{¶18} Upon review, the court determines that the special master did not err when he found that DPS "sufficiently met its obligation to provide GP Media with the opportunity and information to revise" its request. The court overrules GP Media's second objection.

## B. ODPS's Two Objections

{¶19} ODPS asks the court to modify the special master's report and recommendation and enter a judgment ordering the names and identifying information of 37 state troopers to be withheld "pursuant to R.C. 149.43(A)(1)(v) and/or R.C. 149.433(A)(1)." ODPS presents two objections for the court's determination:

(1) "The Special Master erred in concluding that the list of names of the 37 Troopers is no longer exempt under the Troopers' Fourteenth Amendment right to privacy following the Troopers' return to Ohio," and

(2) "The Special Master erred in concluding that the list of names of the 37 Troopers is no longer exempt as a security record under R.C. 149.433(A)(1) following the Troopers' return to Ohio."

{¶20} In opposition, GP Media asserts that ODPS's objections "attempt to interject into this proceeding new evidence and arguments not considered by the Special Master in his Report and Recommendation ('Report')." GP Media states: "Requester has submitted this Response to make clear its position regarding the merits of Respondent's Objections, and fully incorporates the substantive arguments made in its Motion to Strike requesting that the Court overrule the Objections. Requester further asks that once the Court rules on the Motion to Strike, that it permit Requester an additional 7 business days from the later of Requester's receipt of the Court's decision, or refiled Objections, to submit a comprehensive Response."

{¶21} Notably, in a *response in opposition*—not by motion—GP Media asks for an additional seven business days to submit a comprehensive response. According to Civ.R. 7(B)(1), an application to the court for an order "*shall be by motion* which, unless made during a hearing or a trial, shall be made in writing." (Emphasis added.) Because GP Media has not made its request by written motion, the court finds that GP Media's request for an additional seven business days to submit a comprehensive response is, as a matter of civil procedure, improper. Even assuming for the sake of argument that GP Media's request were procedurally proper and that the request for an additional seven business days to submit a comprehensive response were granted by the court, the court determines that such a ruling would contravene R.C. 2743.75(F)(2), which requires this court to issue a final order within seven business days after a response to an objection is filed. *See* R.C. 2743.75(F)(2) ("The court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation"). The court concludes that GP Media's request for additional time to submit a "comprehensive Response" is improper, as a matter of civil procedure, and it is incompatible with R.C. 2743.75(F)(2).

### 1. ODPS's Objection No. 1

{¶22} By its first objection, ODPS asks the court to determine that the special master erred when he concluded that the list of names of 37 troopers "is no longer exempt under the Troopers' Fourteenth Amendment right to privacy" following the troopers' return to Ohio from deployment in North Dakota.

{¶23} In *State ex rel. Quolke v. Strongsville City Sch. Dist. Bd. of Edn.*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 29, the Ohio Supreme Court instructed that "in general, a court is to consider the facts and circumstances existing at the time that it makes its determination on a writ of mandamus, not at some earlier time. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162, 228 N.E.2d 631 (1967)." And in a footnote, the court added: "This principle is not absolute. For example, when a mandamus action involves the review of an administrative agency's discretion, the decision to issue the writ must be made based on the facts before the agency at the time it made its original decision." *Quolke*, at ¶ 29, fn. 1. Although the present complaint was not brought in mandamus, *Quolke*'s instruction applies in this instance because actions in mandamus historically have provided the means for adjudicating public-records disputes, *see*, *e.g.*, *Craig*, *supra*, *Quolke*, *supra*, and because under R.C. 2743.75(F)(1) the General Assembly has required a special master to issue a report and recommendation "based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint."

{¶24} The Ohio Supreme Court has recognized that police officers "have a fundamental constitutional interest in preventing the release of private information when disclosure would create a substantial risk of serious bodily harm, and possibly even death, 'from a perceived likely threat,' so any such disclosure by the state should be measured under strict scrutiny.' " *State ex rel. Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, ¶ 14, quoting *Kallstrom v. Columbus*, 136 F.3d 1055, 1064 (6th Cir.1998). Under a strict-scrutiny analysis, a court examines whether an

infringement of a fundamental right by governmental action is narrowly tailored to promote a compelling governmental interest. *See State ex rel. Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, ¶ 14, quoting *Kallstrom* at 1064 (" '[w]here state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest' "). Since state highway patrol officers—like police officers—are both law enforcement officers who may face a substantial risk of serious bodily harm, and possibly even death if private information is disclosed, it is reasonable that the Ohio Supreme Court's determination in *Craig*, at ¶ 14 should apply in this matter.

{¶25} Among the competing governmental interests presented in this case are (1) preventing the release of private information of certain state highway patrol officers when disclosure would create a substantial risk of serious bodily harm, and possibly even death, from a perceived likely threat, and (2) adhering to the principle that records in the custody of public officials should be open to inspection by anyone at appropriate times. *See State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 171 N.E.2d 508 (1960), paragraph one of the syllabus ("Generally, those records in the custody of public officials which have been designated 'public records' by the General Assembly are open to inspection by anyone at appropriate times, subject to the limitation that such inspection does not endanger the safety of the records or unreasonably interfere with the discharge of the duties of the officer having custody of the same"); *State ex rel. Warren Newspapers v. Hutson*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994) ("In Ohio, public records are the people's records, and officials in whose custody they happen to be are merely trustees for the people; therefore, anyone may inspect these records at any reasonable time, subject only to the limitation that such inspection does

not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same").

{¶26} Here, with respect to ODPS's contention that certain state troopers' names should not be released because disclosure would violate the troopers' constitutional right to privacy under the Fourteenth Amendment, the special master states: "Upon careful review, the evidence in this case supports the privacy exception only to the extent of withholding the Troopers' names during deployment.  The evidence does not justify the continuing use of the exception following the Troopers' return to Ohio." (Report and Recommendation, 10.) Later in the report and recommendation, the special master states: "The risk that was perceived during deployment has now receded. DPS presents no evidence of retaliatory pursuit of the Troopers or their families." (Report and Recommendation, 18.)

{¶27} In ODPS's memorandum in support of its objections, ODPS states: "The Special Master points out several times that the Department provides no evidence of an incident where an Ohio Trooper was doxed or of other 'retaliatory pursuit of the Troopers or their families. * * * This is indeed correct; the Department is in the grateful position of having no examples of the 37 Ohio Troopers, or their family members, being the subject of a violent threat or doxing since returning from deployment."  (Objections, 11.)  In view of ODPS's admission of a lack of evidence, the court determines that the special master's finding that the risk that was perceived during their deployment has receded is justified.

{¶28} Upon review, the court rejects ODPS's contention that the special master erred when he concluded that the list of names of 37 troopers is no longer exempt under the Troopers' Fourteenth Amendment right to privacy following the troopers' return to Ohio from deployment in North Dakota.  The court overrules ODPS's first objection.

## 2.  ODPS's Objection No. 2

{¶29} By its second objection, ODPS asks the court to determine that the special master erred when he concluded that the list of names of the 37 troopers is no longer exempt as a security record under R.C. 149.433(A)(1) after the troopers returned to Ohio.

{¶30} R.C. 149.433 exempts security and infrastructure records from disclosure by a public agency.  Pursuant to R.C. 149.433(A)(1), a security record "means any of the following: * * * Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." *See* R.C. 149.011(A) (" 'Public office' includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government"); *see also State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 33 ("ODPS and OSHP [Ohio State Highway Patrol] both qualify as a 'public office,' * * * ").  According to R.C. 149.433(B)(1), a record kept by a public office that "is a security record is not a public record under section 149.43 of the Revised Code and is not subject to mandatory release or disclosure under that section."

{¶31} Here, ODPS seeks to withhold the names of certain state troopers who were deployed to North Dakota and who have returned to Ohio following a period of deployment.  In the special master's report and recommendation, the special master relies on *State ex rel. Plunderbund Media, L.L.C. v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, ¶ 20 for the proposition that the term "public office" "as used in the statute includes officials and employees."  (Report and Recommendation, 19.)  In *Plunderbund Media*, at ¶ 20, the Ohio Supreme Court noted that "a public office cannot function without the employees and agents who work in that office, and records 'directly used for protecting or maintaining the security of a public office' must inevitably include those that are directly used for protecting and maintaining the security of the employees

and other officers of that office." Thus, it follows that, when a public office's employees and agents require protection and security against attack, interference, or sabotage, certain information, such as the name of a public office's employee or agent, is not subject to mandatory release or disclosure.

{¶32} In ODPS's memorandum in support of its objections, ODPS urges that the threat of attacks from protestors in North Dakota has not abated, and with pipeline construction activity in Ohio, threats of attack will likely continue against law enforcement officers. ODPS's concern for the safety of the state troopers who were deployed to North Dakota is reasonable. But the correctness of ODPS's assessment of the existing threat to the state troopers who were deployed to North Dakota may be debated. Doubt thus exists. When doubt exists in a matter concerning public records, Ohio case law indicates that disclosure is favored. *See State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996) ("R.C. 149.43 is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records"); *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20 ("It has long been the policy of this state, as reflected in the Public Records Act and as acknowledged by this court, that open government serves the public interest and our democratic system. We have repeatedly espoused this principle: ' "R.C. 149.43 [the Public Records Act] is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." ' (Brackets sic.) *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334").

{¶33} In this instance, because ODPS has admitted that it is in the "position of having no examples of the 37 Ohio Troopers, or their family members, being the subject of a violent threat or doxing since returning from deployment" (Objections, 11), it is far from evident that, at present, the state troopers who have returned to Ohio following

deployment in North Dakota require protection and security against attack, interference, or sabotage or that the names of these state troopers constitute a security record—a "record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1).

{¶34} Given these circumstances, the court determines that the special master did not err when he concluded that the list of names of the 37 troopers is no longer exempt as a security record under R.C. 149.433(A)(1) after the troopers returned to Ohio. The court overrules ODPS's second objection.

## Conclusion

{¶35} Accordingly, for reasons set forth above, the court determines that GP Media's motion to strike of May 9, 2017 should be granted and that attachments to ODPS's objections that were not before the special master should be stricken, that GP Media's objections of May 8, 2017 should be overruled, and that ODPS's objections of May 5, 2017 should be overruled. The court further determines that the special master's report and recommendation should be adopted as its own, including the special master's findings of fact and conclusions of law contained in the report and recommendation.

PATRICK M. McGRATH
Judge

cc:

John C. Greiner                          Heather L. Buchanan
312 Walnut Street                        Assistant Attorney General
Suite 1800                               30 East Broad Street, 16th Floor
Cincinnati, Ohio 45202                   Columbus, Ohio 43215

                                         Morgan A. Linn
                                         Assistant Attorney General
                                         1970 West Broad Street, Suite 531
                                         Columbus, Ohio 43223

**Filed May 30, 2017**
**Sent to S.C. Reporter 6/13/17**