[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Greene*, Slip Opinion No. 2020-Ohio-3686.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.


SLIP OPINION NO. 2020-OHIO-3686

THE STATE EX REL. MCDOUGALD *v.* GREENE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Greene*, Slip Opinion No. 2020-Ohio-3686.]**

*Mandamus—R.C. 149.43—Producing the requested records to a relator in a public-records mandamus case moots the claim—A prison kite does not constitute hand delivery—Writ denied.*

(No. 2019-0880—Submitted April 28, 2020—Decided July 14, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Jerone McDougald, filed this original action for a writ of mandamus to compel respondent, Larry Greene, the administrative assistant for the warden at the Southern Ohio Correctional Facility ("SOCF"), to produce two public records.  For the reasons explained below, we deny the writ as moot and deny McDougald's requests for an award of court costs and for statutory damages.  In

addition, we deny McDougald's motion for leave to amend his complaint and merit brief.

## I. BACKGROUND

{¶ 2} On December 5, 2018, McDougald, who had been an inmate at SOCF, submitted a public-records request for a copy of the Department of Administrative Services's general schedule ("the DAS schedule"). And on February 3, 2019, he submitted a second public-records request for a copy of a report that had been filed by Brian Barney on December 20, 2018, concerning a use-of-force incident involving McDougald ("the Barney report").

{¶ 3} Greene, the SOCF official responsible for responding to inmates' public-records requests, notified McDougald that the Barney report did not exist. The record does not indicate what initial response Greene gave, if any, to McDougald's request for the DAS schedule.

{¶ 4} On June 28, 2019, McDougald filed a complaint for a writ of mandamus in this court alleging that Greene had denied both public-records requests. In Greene's answer, he averred that he had provided the DAS schedule to McDougald on July 22, 2019—after McDougald filed the complaint. Greene continued to assert that the Barney report did not exist. On September 25, we issued an alternative writ and ordered the parties to file briefs and submit evidence in accordance with S.Ct.Prac.R. 12.05. 157 Ohio St.3d 1414, 2019-Ohio-3797, 131 N.E.3d 949.

{¶ 5} Greene submitted his evidence on October 15, which included his own affidavit. In the affidavit, Greene reiterated that he had provided the DAS schedule to McDougald. Greene also attached a "document receipt," which was dated July 22, 2019, and signed by McDougald acknowledging that he had received a copy of the DAS schedule. Greene also asserted once more that the Barney report did not exist.

**{¶ 6}** Two weeks later, however, Greene discovered that the Barney report *did* exist. On October 31, he filed a motion for leave to file newly discovered evidence. The motion stated that Greene's staff had previously searched for a stand-alone file containing the Barney report and had not found one. But on October 31, according to Greene, he discovered the Barney report in a multipage use-of-force report "issued by the Use of Force Committee on April 19, 2018 [sic]."[1] According to the motion, Greene provided the report to McDougald that same day. The motion requested leave to submit an additional affidavit attesting to these facts.

**{¶ 7}** McDougald filed a motion to strike Greene's motion for leave, and Greene responded with a motion to strike McDougald's motion. We denied both motions to strike and granted Greene's motion for leave to file the additional evidence. 158 Ohio St.3d 1404, 2020-Ohio-371, 139 N.E.3d 908. Greene then filed his supplemental affidavit with the Barney report.

**{¶ 8}** On February 5, 2020, McDougald filed a motion for leave asking to amend his complaint and merit brief so that he could allege the following additional fact to bolster his request for statutory damages: "[T]hat his public records request kite was hand delivered" to Greene. On February 12, we ordered the parties to brief the following question: "When none of the statutory delivery methods are available to an inmate, does a kite constitute hand delivery?" 158 Ohio St.3d 1404, 2020-Ohio-371, 139 N.E.3d 908. Both parties filed supplemental briefs. On May 21, 2020, we granted Greene's motion for leave to file a corrected brief. 158 Ohio St.3d 1519, 2020-Ohio-3019, 145 N.E.3d 307.

---

1. Given that the Barney report was not drafted until December 20, 2018, the Use of Force Committee's report was likely drafted on April 19, 2019, not 2018.

## II. LEGAL ANALYSIS

### A. The merits of McDougald's public-records case

{¶ 9} Ohio's Public Records Act, R.C. 149.43(B)(1), requires a public office to make copies of public records available to any person on request and within a reasonable period of time. R.C. 149.43(B)(1). Mandamus is an appropriate remedy by which to compel compliance with R.C. 149.43. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. However, producing the requested records to a relator in a public-records mandamus case moots the claim. *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 27.

{¶ 10} Greene submitted his own affidavit and McDougald's signed receipt as evidence to establish that he gave the DAS schedule to McDougald in July 2019. And McDougald has conceded in his merit brief that he received the DAS schedule. Therefore, McDougald's request for a writ of mandamus to compel Greene to provide him with the DAS schedule is moot.

{¶ 11} As for the Barney report, Greene attests in his supplemental affidavit that he located it and promptly turned it over to McDougald. Greene also submitted McDougald's signed acknowledgement that he received a copy of the Barney report. These facts do not seem to be in dispute. Therefore, the mandamus claim seeking the Barney report is also moot.

{¶ 12} We deny McDougald's request for a writ of mandamus as moot.

### B. Statutory damages

{¶ 13} A person requesting public records is entitled to an award of statutory damages "if a court determines that the public office or the person responsible for [the] public records failed to comply with an obligation in accordance with division (B) of this section." R.C. 149.43(C)(2). Statutory damages shall be awarded "when a court determines that the public office failed to

comply with an obligation to provide access to the records." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 23. But, even if a relator does not prevail on the mandamus claim, it is still possible for him to receive an award of statutory damages. *See, e.g., State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 22 (holding that even though relator's mandamus claims were moot, an award of statutory damages was warranted nonetheless, because respondent took an unreasonable length of time to produce the records); *Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 32 (same).

{¶ 14} A requester may qualify for statutory damages under the current version of R.C. 149.43[2] only when he "transmits a written request [for the public records] by hand delivery, electronic submission, or certified mail * * * to the public office or person responsible for the requested public records." R.C. 149.43(C)(2). A requester who fails to prove that delivery was accomplished by one of the methods authorized in R.C. 149.43(C)(2) is ineligible to receive an award of statutory damages. *See State ex rel. Penland v. Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 16 (denying relator's request for an award of statutory damages under the applicable version of R.C. 149.43 because "no evidence suggest[ed] that [relator] delivered his request * * * by hand or certified mail"); *State ex rel. Hogan-Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 35 (plurality opinion) (concluding that under the applicable version of R.C. 149.43 , a public-records request served by e-mail did not support an award of statutory damages). A requester seeking statutory damages must prove the method of delivery by clear

---

2. Public-records requests are governed by the version of R.C. 149.43 that was in effect at the time that the request was made. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11. The current version of R.C. 149.43 as amended by 2018 Sub.H.B. No. 312, took effect in November 2018 and governs McDougald's requests.

and convincing evidence. *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9.

*1. A prison kite does not constitute hand delivery*

{¶ 15} McDougald delivered his public-records requests through the prison's kite system. In his supplemental brief, McDougald argues that "when none of the statutory delivery methods are available to an inmate, a kite constitutes hand delivery."

{¶ 16} The prison's kite system is "the means of two-way communication between all levels of staff and inmates." DRC Policy 50-PAM-02, at 6, https://drc.ohio.gov/Portals/0/Policies/DRC%20Policies/50-PAM-02%20(12-2019).pdf?ver=2019-12-09-140951-550 (accessed May 15, 2020) [https://perma.cc/CE3L-J99N]. In order to submit kites, inmates at SOCF use a form that has been prepared by DRC. The inmate fills in identifying information on the front of the form and then writes his question, concern, or public-records request on the back of the form. Captain James Whitman, the officer in charge of the mail operations at SOCF, stated in his affidavit attached to Greene's supplemental brief that each cell block has a sealed "Kite Drop-box," into which inmates drop their completed kites. The kite drop boxes are then taken to the mailroom, where the mailroom staff sorts the kites and delivers them to the appropriate recipients.

{¶ 17} "Neither the statute nor case law [construing R.C. 149.43] indicates exactly what 'hand delivery' means." *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 40. Although "hand delivery" does not necessarily require a face-to-face handoff with the ultimate recipient—handing the request to another prison official can be sufficient. *Id.* According to McDougald's supplemental brief, "a kite constitutes hand delivery as it is a means of two-way communication between all levels of staff within the institution and *a kite is handed to institution staff who address any issues an inmate may have*."

(Emphasis added.) However, the evidence in the record does not support McDougald's unsworn description of the prison's kite system. According to Captain Whitman's affidavit, the inmate places the kite into a sealed lockbox, and the box is conveyed to a central location for sorting and distribution. A kite is therefore more analogous to sending a letter through the regular U.S. mail, in which correspondence is customarily retrieved from a box and passes through multiple hands before being delivered to its intended recipient. And regular U.S. mail delivery, unlike certified-mail delivery, does not qualify the sender of a public-records request for statutory damages.

{¶ 18} Because the prison's kite system more closely resembles an insufficient form of delivery—i.e., regular U.S. mail delivery—we hold that delivery of a public-records request through a prison's kite system does not qualify a requester for an award of statutory damages under R.C. 149.43(C)(2).

*2. McDougald's motion for leave to amend*

{¶ 19} On February 5, 2020, McDougald filed a motion for leave to amend his complaint and merit brief "to specify that his public records request kite was hand delivered to Larry Greene during his inmate communication weekly rounds pursuant to []DRC policy 50-PAM-02."[3] In *Carr* at ¶ 40, we held that "hand delivery of the [public-records] requests to a prison official fulfilled the delivery requirement of [R.C. 1493.43]." Presumably, McDougald is attempting to amend his complaint and merit brief so that in the event that this court determines that his kite does not qualify as hand delivery, he may still qualify for an award of statutory damages.

{¶ 20} We deny McDougald's motion for leave to amend his complaint and merit brief because the amendment would be futile. *See ISCO Indus., Inc. v. Great Am. Ins. Co.*, 1st Dist. Hamilton No. C-180636, 2019-Ohio-4852, ¶ 52 (holding that

---

3. DRC policy 50-PAM-02 at 2-3, requires specific officers to visit inmate-living and inmate-activity areas on a weekly basis.

a court properly denies a request for leave to amend under Civ.R. 15(A) when an amendment would be futile). To be eligible for statutory damages, McDougald must prove that he used a qualifying method of delivery by clear and convincing evidence. *Martin*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, at ¶ 9. McDougald has sought to amend his *complaint* and his *merit brief*, but he has not introduced *evidence*, such as an affidavit, to establish that he personally handed the kites to Greene. Greene, however, has submitted evidence that he did not enter McDougald's cell block or speak to him on December 5, 2018, or February 3, 2019.

**{¶ 21}** The burden of proof as to the delivery method of a public-records request falls on McDougald. Amending his complaint and merit brief will not provide him with any additional evidence and certainly not with evidence sufficient to meet his burden. The motion for leave is therefore denied.

**{¶ 22}** Based on the foregoing, we find that McDougald did not deliver his two public-record requests by one of the qualifying statutory delivery methods and therefore deny his request for an award of statutory damages.[4]

### C. Court costs

**{¶ 23}** Finally, McDougald contends that he is entitled to an award of court costs. Unlike statutory damages, court-cost awards are not dependent on the requester's use of any specific method of delivery. When a court grants a writ of mandamus ordering a public official to produce records, the court shall order an award of court costs, R.C. 149.43(C)(3)(a)(i). But we are not granting a writ of mandamus in this case because the requested records have already been produced.

**{¶ 24}** Therefore, McDougald's claim for an award of costs is governed by R.C. 149.43(C)(3)(a)(ii), which states that "[i]f a court makes a determination described in division (C)(3)(b)(iii) of this section, the court shall determine and

---

4. We note that McDougald could have sent his public-records requests by certified mail. As stated by Captain Whitman in his affidavit, DRC policy "requires that all institutions provide certified mail services for inmates," and that SOCF "continue[s] to make certified mail available to all inmates."

award to the relator all court costs." R.C. 149.43(C)(3)(b)(iii) states that a court may award reasonable attorney's fees to the relator when:

> The public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the public office or person was required to comply with division (B) of this section. No discovery may be conducted on the issue of the alleged bad faith of the public office or person responsible for the public records. This division shall not be construed as creating a presumption that the public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order described in this division.

{¶ 25} For purposes of this opinion, we are going to assume that it is possible for a pro se requester like McDougald to be eligible for court costs under R.C. 149.43(C)(3)(a)(ii) without issuing a holding on that exact issue.[5] McDougald contends that Greene's bad faith is demonstrated by the fact that Greene did not produce the DAS schedule until after McDougald filed a complaint for a writ of

---

5. We have not yet decided whether an award of attorney's fees under R.C. 149.43(C)(3)(b)(iii) is a condition precedent to an award of court costs under R.C. 149.43(C)(3)(a)(ii). Two appellate courts have held that R.C 149.43(C)(3)(a)(ii) does *not* make an actual award of attorney's fees a condition precedent to an award of court costs. *See Crenshaw v. Cleveland Law Dept.*, 8th Dist. Cuyahoga No. 108519, 2020-Ohio-921, ¶ 57 (contemplating award of court costs in favor of pro se requester who was ineligible for an award of attorney's fees); *State ex rel. Bristow v. Baxter*, 6th Dist. Erie No. E-18-026, 2019-Ohio-214, ¶ 47 (same).

mandamus. But R.C. 149.43(C)(3)(b)(iii) does not create a presumption that the person responsible for retrieving the public records acted in bad faith when he makes the records available to the requester for the first time after the requester files a petition for a writ of mandamus, but before a court issues a writ. In other words, a court's finding of "bad faith" under R.C. 149.43(C)(3)(b)(iii) must be based on more evidence than what McDougald has produced.

{¶ 26} " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. Bad faith " ' "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." ' " *Id*., quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus, *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 664 N.E.2d 397 (1994), paragraph one of the syllabus. McDougald has not alleged any facts to suggest that Greene acted in bad faith in his handling of McDougald's request for the DAS schedule.

{¶ 27} Nor is there evidence of bad faith regarding the Barney report. As recently as October 2019, Greene swore in an affidavit that he believed the Barney report did not exist. Greene reached this conclusion because he looked for the report in a stand-alone file, but failed to find it. When Greene later found the report in a package of documents, he provided it to McDougald that very same day.

{¶ 28} McDougald suggests that Greene was untruthful when he claimed that the Barney report did not exist. As evidence, McDougald submitted a conduct report prepared by a different officer, describing an incident involving McDougald

and Barney, in which Barney "deployed a short burst of OC spray"[6] for purposes of restraining McDougald. McDougald's argument appears to be that since DRC regulations require Barney to prepare a report after such an incident, the report must have been prepared. Although this line of reasoning may prove that Barney *should* have written a report, it does not prove that he actually wrote a report, and it certainly does not prove that Greene was untruthful when he said that he could not locate the report and believed that it did not exist.

{¶ 29} We deny McDougald's request for court costs.

### III. CONCLUSION

{¶ 30} Based on the foregoing, we deny McDougald's motion for leave to amend his complaint and merit brief, deny the writ of mandamus as moot, and decline to award McDougald statutory damages or court costs.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by STEWART, J.

_____

**KENNEDY, J., dissenting.**

{¶ 31} Ohio's Public Records Act, R.C. 149.43, allows for statutory damages when a public-records request that was delivered by hand goes unanswered for an unreasonable length of time. R.C. 149.43(C)(2); *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 22. The issue in this case is whether the use of a kite—a means of communication approved by the Ohio Department of Rehabilitation and Corrections ("DRC") and used by incarcerated individuals to communicate with prison officials—constitutes "hand delivery" for purposes of R.C. 149.43. If a kite

---

6. "OC spray" is another term for pepper spray. *See Henley v. Dept. of Rehab. & Corr.*, Ct. of Claims No. 2014-00275, 2016-Ohio-1276, ¶ 5.

11

constitutes hand delivery, then an incarcerated individual who submits his public-records request by kite is eligible for statutory damages if the public office from which he requests the record fails to comply with R.C. 149.43. Before today, this court has not explicitly held whether a public-records request transmitted by kite constitutes hand delivery.

{¶ 32} The majority opinion does answer the question, but does so without applying the plain language of the statute. Instead, in reaching its holding, the majority opinion resorts to an inapt analogy comparing the prison's kite system to the United States mail system. In the end, the majority opinion makes clear that analysis is immaterial; the important thing is that the majority opinion's desired result will stand: prison officials may ignore or unreasonably delay responding to public-records requests made by incarcerated individuals without the fear of any penalty. That includes instances like the one in this case in which respondent, Larry Greene, unreasonably delayed responding to the public-records request from relator, Jerone McDougald, for a report regarding a correctional officer's use of force against him. Today, this court diminishes the right of a particular group of people—incarcerated individuals—to receive the public records that they have properly requested under R.C. 149.43, and thereby has created a collateral consequence of incarceration. The plain language of R.C. 149.43 requires this court to hold that a public-records request submitted by kite constitutes hand delivery and that the incarcerated individual who submitted the request is therefore eligible for statutory damages. Accordingly, I dissent.

**Factual background**

{¶ 33} At the time that McDougald made his public-records requests, he was incarcerated at the Southern Ohio Correctional Facility ("SOCF"). Greene is the administrative assistant to the warden and is the person tasked with responding to incarcerated individuals' public-records requests at SOCF. On December 5, 2018, McDougald used a kite to request a copy of the Department of Administrative

Services' general schedule ("the DAS schedule"). On February 3, 2019, using another kite, he submitted a second public-records request for a copy of a report that had been filed by Brian Barney on December 20, 2018, concerning a use-of-force incident involving McDougald ("the Barney report"). Greene confirms that the warden's office received both requests.

**{¶ 34}** On February 13, 2019, Greene sent a response to McDougald stating, "Your request for an Incident Report filed by Brian Barney on December 20, 2018 does not exist. This is according to the secretary that searched the records to fulfill this public record request." The record in this case does not contain a response from Greene regarding McDougald's request for the DAS schedule.

**{¶ 35}** On June 28, 2019, McDougald filed a complaint for a writ of mandamus in this court claiming that Greene denied his request for the DAS schedule on December 7, 2018, and his request for the Barney report on February 13, 2019. Noting that "[a] person who transmits a valid written request for public records by hand delivery is entitled to receive statutory damages," McDougald sought statutory damages in the amount of $1,000.

**{¶ 36}** Greene filed an answer on July 22, 2019, stating that he had provided the DAS schedule to McDougald that same day—July 22. Greene also asserted that on February 13, he had told McDougald that the Barney report did not exist. On September 25, this court issued an alternative writ and ordered the parties to file briefs and submit evidence in accordance with S.Ct.Prac.R. 12.05. 157 Ohio St.3d 1414, 2019-Ohio-3797, 131 N.E.3d 949.

**{¶ 37}** Greene submitted evidence on October 15, 2019, including his own affidavit, in which he stated, "My response to Relator McDougald that an incident report filed by Brian Barney on December 20, 2018 does not exist, still stands as it is the correct response to his request." But in an October 31, 2019 motion for leave to file newly discovered evidence, Greene changed course, admitting that the Barney report did exist, stating that "it was just discovered that the Incident Report

was included in a packet of information and documents reviewed and maintained by the SOCF Use of Force Committee." Greene reported that he provided McDougald the Barney report on October 31, 2019, almost nine months from when he had asked for it. The Barney report was drafted on December 20, 2018, so it existed when McDougald made his public-records request.

{¶ 38} On February 5, 2020, McDougald filed a motion for leave to amend his complaint and brief, asking to amend his complaint "to specify that his public records request kite was hand delivered to Larry Greene during his inmate communication weekly rounds * * * on December 5, 2018 and February 3, 2019." McDougald submitted no affidavit in support of that motion, and the majority denies the motion today.

{¶ 39} On February 12, this court ordered briefing on the following issue: "When none of the statutory delivery methods are available to an inmate, does a kite constitute hand delivery?" 158 Ohio St.3d 1404, 2020-Ohio-371, 139 N.E.3d 908. It is regrettable that the phrasing of the question is imprecise; the wording seems to assume that a kite is not "a statutory delivery method[ ] available to an inmate," and that if an incarcerated individual has the financial wherewithal to send a certified-mail request or has access to e-mail, a kite cannot constitute hand delivery. What the court really asks—and the question the majority answers—is whether a kite constitutes hand delivery.

**The kite system**

{¶ 40} "A 'kite' is written by an inmate to a member of the prison staff and is 'a means for inmates to contact staff members inside [an] institution.' " *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. Richland No. 16CA52, 2017-Ohio-1472, ¶ 15. Pursuant to a DRC policy, "[t]he inmate kite system shall be utilized as the means of two-way communication between all levels of staff and inmates." DRC Policy 50-PAM-02, at 6, https://drc.ohio.gov/Portals/0/Policies/DRC%20Policies

14

/50-PAM-02%20(12-2019).pdf?ver=2019-12-09-140951-550 (accessed June 15, 2020) [https://perma.cc/R42H-UHK2]. DRC's protocol for responding to kites is to answer each kite "within seven (7) calendar days." *Id.* Kites must also receive an entry in the prison's kite log. *Id.* And responses must be "either written directly on the kite received or on the Kite Response form." *Id.* Here, Greene used the kite-response form.

{¶ 41} The kite form that inmates use is created by the DRC. Each kite is preprinted and contains instructions. The instructions include, "[W]rite only to the Department that handles the problem you have. Others will merely forward your kite," and, "Kites are to be used only for communication between inmates and Institutional Staff and not for any other purpose." Inmates name the person to whom they want the kite delivered and also circle the job title or work area of the person to whom they want it delivered from a list that includes: warden, deputy warden, the Library, Records, and others. At SOCF, incarcerated individuals deposit their completed kites in a locked container. Each cell block has a kite lockbox. If an incarcerated individual is unable to leave his cell, an on-duty corrections officer will walk the lockbox to the inmate so that he can drop the kite into the secured lockbox. The lockboxes are then taken to the mailroom, where the kites are sorted and then delivered to the addressee.

### Statutory damages

{¶ 42} Pursuant to R.C. 149.43(C)(2),[7] a person who makes a public-records request "shall be entitled to recover * * * statutory damages * * * if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with" R.C. 149.43(B). R.C.

---

7. Public-records requests are governed by the version of R.C. 149.43 that was in effect at the time that the request was made. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11. The version of the Public Records Act that governs McDougald's requests, R.C. 149.43 as amended by 2018 Sub.H.B. No. 312, took effect in November 2018 and governs McDougald's requests.

149.43(B)(1) states that "a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost *and within a reasonable period of time.*" (Emphasis added.) Greene does not argue that he provided the records to McDougald within a reasonable period of time. He unquestionably failed to comply with an obligation imposed by R.C. 149.43(B).

{¶ 43} Therefore, McDougald is substantively eligible for statutory damages. The purpose of awarding statutory damages is to provide "compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed." R.C. 149.43(C)(2). Statutory damages are calculated at the rate of $100 for every business day the public office or person responsible for the requested public records fails to comply with an obligation under R.C. 149.43(B), starting from the date of the filing of a complaint in mandamus, with a maximum award of $1,000. R.C. 149.43(C)(2). Given the time that passed from when McDougald filed his complaint to when Greene produced the Barney report, McDougald is eligible for the statutory maximum.

{¶ 44} However, a court may reduce or decline to award statutory damages if it finds that based on the law as it existed at the time that the public office allegedly failed to comply with R.C. 149.43, "a well-informed public office * * * reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and that "a well-informed public office * * * reasonably would believe that the conduct * * * of the public office * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b).

{¶ 45} Under this standard, McDougald would be entitled to a full award of statutory damages. The factors that allow a court to reduce statutory damages under R.C. 149.43(C)(2) do not apply here. No well-informed public office or person responsible for the requested public records would believe that failing to provide McDougald the Barney report for nearly nine months or the DAS schedule for more

16

than seven months constituted compliance with R.C. 149.43. And no such public office or person would believe that Greene's failure to provide the public records served any public policy underlying R.C. 149.43.

{¶ 46} Therefore, the only thing keeping McDougald from being awarded statutory damages in this case is the procedural hurdle that such damages are available to him only if he "transmit[ted] a written request by hand delivery, electronic submission, or certified mail." And that brings us to the question upon which we ordered briefing.

*A kite qualifies as hand delivery under R.C. 149.43(C)(2)*

{¶ 47} Our main objective in applying a statute is to determine and then give effect to the legislature's intent, *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995), which is decided by reviewing the language of the statute itself, *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 48} R.C. 149.43(C)(2) states:

> If a requester transmits a written request by hand delivery * * * to inspect or receive copies of any public record * * * to the public office or person responsible for the requested public records, * * * the requester shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that

the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

{¶ 49} "Hand delivery" is not defined in R.C. 149.43 and we therefore construe its meaning according to its common usage. R.C. 1.42. We do not need to employ dictionaries to know that "hand delivery" means delivery by hand or personally transporting something. For purposes of this case, the key language from the statute is that hand delivery of a public-records request does not have to be made to a specific person. Instead, the request may be transmitted by hand delivery to *the public office*. Therefore, if hand delivery is made to the public office, the requester is eligible for statutory damages. " 'Public office' includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A). Because SOCF is a public institution operated by a state agency, it qualifies as a "public office." *See State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6.

{¶ 50} McDougald hand delivered his public-records requests to SOCF when he deposited his kite into the receptacle within the public office that is designated to accept public-records requests from incarcerated individuals. The fact that McDougald resided within the very public office where he made his hand delivery does not matter. R.C. 149.43(C)(2) does not care that his trip was short. The only thing that matters is that he achieved delivery by hand to the public office.

{¶ 51} The majority neither applies nor interprets R.C. 149.43(C)(2). Instead, the majority reaches its desired result by using a faulty analogy. The majority focuses on SOCF's kite procedure and fixates on the words "sealed lockbox," majority opinion at ¶ 17, and concludes that since the regular U.S. mail

delivery also uses secured boxes to hold mail, the SOCF kite system is the same as regular U.S. mail. According to the majority, because an incarcerated individual places his kite into a sealed lockbox and the box is conveyed to a central location for sorting and distribution, a kite request is "therefore more analogous to sending a letter through the regular U.S. mail, in which correspondence is customarily retrieved from a box and passes through multiple hands before being delivered to its intended recipient." Majority opinion at ¶ 17. The majority then reasons that since regular U.S. mail delivery does not qualify a requester of public records for statutory damages, a person who makes a request using a kite does not qualify to receive statutory damages.

{¶ 52} But an incarcerated individual's hand delivery of a public-records request to the public office has been achieved once he places the kite in the lockbox. How the public office routes the public-records request once it has been received is irrelevant under R.C. 149.43(C)(2). Whether the public office moves a sealed lockbox to a central-distribution point or whether it distributes the request by carrier pigeon does not matter. Ohio's Public Records Act does not involve itself with the minutiae of how a request moves through a bureaucracy. Ohio's Public Records Act simply provides that when the public office receives a public-records request, it must respond within a reasonable amount of time. If the public office fails to respond or takes too long to respond, it is liable for statutory damages if the request was delivered by a qualifying method. Here, hand delivery occurred when the requests went into the lockbox.

{¶ 53} Further, SOCF's kite system is nothing like the regular U.S. mail. The incarcerated person is not paying a separate entity to deliver his message. The kite never leaves SOCF. No personnel other than employees of the recipient public office ever touch the kite. There is no separate agency acting as an intermediary. The sealed-lockbox system would be analogous to the U.S. mail only if U.S. mail delivery were achieved by each sender carrying his own letter to the recipient's

address himself, entering the recipient's home or place of business, and placing the piece of mail in a receptacle inside the recipient's home or business. In other words, the two delivery methods are not analogous at all.

{¶ 54} If the majority truly believes the kite system is analogous to the U.S. mail—which it is assuredly not for the reasons stated above—it is analogous to a certain species of U.S. mail: certified mail. DRC policy requires that the recipient respond within seven days after receiving the kite by returning the kite with an answer written on it or by completing and delivering a kite-response form. *See* DRC Policy 50-PAM-02, at 6. Through the use of the kite log and the receipt system, an inmate can be assured that his kite was delivered, as with certified mail.

{¶ 55} But analogies are unnecessary. McDougald did all he needed to do in order to qualify for an award of statutory damages under R.C. 149.43(C)(2)—he hand delivered his public-records requests to the public office. R.C. 149.43(C)(2) concerns itself with the manner of delivery—hand delivery, e-mail, or certified mail. It leaves to the public office where to take delivery; R.C. 149.43(E)(2) allows the public office to adopt its own public-records policy for responding to public-records requests. SOCF has determined that public-records requests may be dropped into lockboxes in each cell block. Once the kite enters the lockbox, delivery has been made to the public office. The majority is wrapped up in how the request is routed through SOCF *after* delivery has been made to the public office. But the public office's determination of what employee or official should address the request and how that request reaches that person once it is delivered to the public office are irrelevant, since R.C. 149.43(C)(2) requires only delivery by hand to the public office. The majority wants to point to the multiple hands the kite may go through until it reaches its destination within the public office. The majority confuses distribution with delivery. The simple, statutory truth is that once a kite hits the lockbox, it is delivered.

20

{¶ 56} SOCF designated the place where public-records requests are to be deposited, and McDougald deposited his requests there. Had he not been an inmate, but a person who delivered his public-records requests to SOCF and deposited them in a secure lockbox designated for the delivery of public-records requests, would the majority hesitate to award him statutory damages? Obviously, the secured lockbox is employed by the institution to prevent allegations of destruction or the accidental misplacement of an inmate's kite. The secured lockbox also achieves a level of trust between the incarcerated individual and staff of the institution that the kite will not be tampered with and assures incarcerated individuals that they will be heard. That is why SOCF's policy requires that when someone who is on restriction and confined to a cell wants to deposit a kite, the correctional officer has to take the secured lockbox to the incarcerated individual.

{¶ 57} Even if McDougald were required to hand deliver his request to the "person responsible for the requested records," R.C. 149.43(C)(2), and not just to the public office, he did just that. In *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 40, this court determined that a prisoner hand delivered his public-records request when he gave the request to a prison official who he knew would deliver it to the public-records custodian. In *Carr*, the requesting prisoner was not allowed into the restricted area where the public-records custodian worked and therefore could not personally hand his public-records request to the public-records custodian. This court determined that Carr's hand delivery of his public-records request to a prison official who could then pass on the request to the public-records custodian fulfilled the statute's hand-delivery requirement.

{¶ 58} This is what McDougald did in this case. The kite form told him that his public-records requests would be delivered to the department that would handle his request. SOCF's kite system allows an inmate to hand deliver a public-records request that he knows that will be delivered, pursuant to prison policy, by a prison

official to the person listed on the kite. Therefore, as in *Carr*, McDougald's delivery to an intermediary constitutes hand delivery.

**Conclusion**

{¶ 59} "The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed." R.C. 149.43(C)(2). McDougald waited nearly nine months to receive the Barney report regarding an incident in which force was used against him in a restraint incident and more than seven months for the DAS schedule. Pursuant to R.C. 149.43, he is entitled to compensation for the delay.

{¶ 60} Incarcerated individuals at SOCF have no access to an e-mail system to make public-records requests and the cost of certified mail is prohibitive. The majority holds that the limitation on how incarcerated individuals make public-records requests prevents them from receiving compensation for injury from the lost use of the requested information. Today, this court determines that when an incarcerated individual deposits a public-records request by hand into a receptacle designated to collect such requests in the facility from which he seeks the record, that his deposit does not constitute "hand delivery" to the public office under R.C. 149.43(C)(2). I disagree, and would hold that a public-records request made by kite constitutes hand delivery under the plain and unambiguous language of R.C. 149.43(C)(2). To hold otherwise not only misconstrues the plain language of the statute but also encourages the delay and obfuscation that has happened in this case.

{¶ 61} Today it is this court, not the General Assembly, that is responsible for the disparate treatment of incarcerated individuals under the Public Records Act engendered by this opinion. The majority acknowledges that by not even analyzing the words the General Assembly uses in the Public Records Act.

{¶ 62} McDougald's incarceration makes him no less deserving of the benefit of R.C. 149.43(C)(2) than any other citizen. The General Assembly is the

sole "arbiter of public policy in Ohio," *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 31, and until the General Assembly strips away or reduces an incarcerated individual's right to make a public-records request, McDougald stands equal in the eyes of the law.

{¶ 63} Therefore, I dissent.

STEWART, J., concurs in the foregoing opinion.

_____

Jerone McDougald, pro se.

Dave Yost, Attorney General, and Tracy L. Bradford, Senior Assistant Attorney General, for respondent.

_____