Analysis
{¶ 14} Kent State contends that it fully responded to Kesterson's February 2, 2016 request by February 25, 2016. In contrast, Kesterson asserts that Kent State did not complete its response.
Timeliness of Kent State's production of responsive records
{¶ 15} Kesterson argues that because Kent State provided additional responsive documents in October and November 2016, up to nine months after her request, it violated its statutory duty under R.C. 149.43(B) to promptly prepare and provide all responsive records "within a reasonable period of time." Indeed, "[s]tatutory damages may be awarded if the public record has not been provided promptly." State ex rel. Cincinnati Enquirer v. Deters , 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 22 ; see also R.C. 149.43(C)(1).
{¶ 16} "Reasonable period of time" is not defined in the Public Records *892 Act, but "the determination of what is 'reasonable' depends upon all the pertinent facts and circumstances." Deters at ¶ 23. Moreover, " R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials." State ex rel. Warren Newspapers, Inc. v. Hutson , 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994).
{¶ 17} Kent State's production, by February 25, 2016, of over 700 pages of responsive records was not untimely under the circumstances. Kesterson requested full personnel files for five Kent State employees, in addition to all Title IX/sexual-assault training materials provided to the softball team and all student-athlete reviews of Linder from the 2010-2011 academic year until her resignation in August 2015. Kent State promptly acknowledged Kesterson's request the next day, immediately began to compile the responsive records, and provided those records to Kesterson approximately three weeks later. These actions contradict *18 any claim that the university's response was untimely. See State ex rel. Shaughnessy v. Cleveland , 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶¶ 11, 17 (24-day delay in producing responsive records was not unreasonable in light of steps city took to respond, including a comprehensive database search and submission of records to the law department for review and redaction).
{¶ 18} Kent State's own evidence demonstrates that it did not complete its response on February 25, 2016, as it contends; the response was not complete until November 9, 2016. The additional materials that Kent State produced in October and November 2016 also amounted to "public records" and were responsive to the second category of records in Kesterson's request. The records produced on October 28 included PowerPoint slideshow presentations provided annually to incoming students addressing issues such as consent to sexual activity, "sexual misconduct," "acts of violence," and the processes for responding to inappropriate student conduct. The slides also provide the contact information for campus police, psychological services, and the Sexual Assault Response Team. These records were provided to all incoming students, including those on the varsity softball team. And the production on November 9 included a PowerPoint slideshow presentation created by the Office of Sexual and Relationship Violence Support Services addressing consent, power-based personal violence, sexual assault, rape and related crimes, statistics of sexual assault on campuses, and what rights and resources are afforded to students (including the contact information for the university's Title IX coordinator).
{¶ 19} Kent State does not dispute that it "created" these items, all of which appear to "document the organization, functions, policies, decisions, procedures, operations, or other activities" of the university. See R.C. 149.011(G). Moreover, Kent State has not alleged that the records produced in October and November 2016 were not available in February of that year, nor has it contended that it was required to create these records. See State ex rel. Lanham v. Smith , 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15 ("Respondents have no duty to create or provide access to nonexistent records"). Kent State also concedes that it made no redactions to the documents produced in October and November 2016. See Warren Newspapers , 70 Ohio St.3d at 623, 640 N.E.2d 174. Those facts, together with its assertion that upon receiving the public-records request in February, DeCaprio contacted "relevant departments and individuals" such as *893 Kent State's Human Resources Records, Human Resources Training and Development, and Athletics departments, belie Kent State's argument that it timely provided all responsive records.
{¶ 20} Although Kent State contends that the records it provided in October and November were not responsive to Kesterson's request, and that this production *19 was done merely as a "courtesy," we are not persuaded. These materials were public records, and despite DeCaprio's assertion that Kesterson's February 2, 2016 request was limited to Title IX and sexual-assault/harassment training offered exclusively to the softball team, this request was broader and encompassed all training and information provided to the softball team, which by definition includes training and information provided to all incoming students-precisely what the university ultimately produced. However, despite its failure to comply with Kesterson's request within a reasonable period of time, Kent State's eventual production of all the requested records has rendered her mandamus claim moot.
Statutory damages
{¶ 21} R.C. 149.43(C)(1) imposes damages at the rate of $100 "for each business day during which the public office * * * failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars."[2] The act provides that an award of statutory damages can be reduced if two conditions are satisfied. State ex rel. Carr v. London Corr. Inst. , 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 41, citing R.C. 149.43(C)(1). A court may reduce or not award statutory damages if it determines that "based on the ordinary application of statutory law and case law as it existed at the time," the public office "reasonably would believe that the conduct or threatened conduct of the public office * * * did not constitute a failure to comply with an obligation" under R.C. 149.43(B)and that the public office "reasonably would believe that the conduct or threatened conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct." R.C. 149.43(C)(1)(a) and (b).[3]
{¶ 22} Kent State violated R.C. 149.43(B) when it did not produce all responsive records until November 9, 2016, more than six months after Kesterson filed her mandamus complaint on April 21, 2016, and therefore statutory damages are warranted. State ex rel. Cincinnati Enquirer v. Sage, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 46. Also, neither condition of R.C. 149.43(C)(1)(a) or (b) is satisfied in this case. Accordingly, because Kesterson has met the requirements for statutory damages, to include a written request that "fairly describe[d]" the records she sought transmitted to Kent State by certified mail, R.C. 149.43(C)(1), we award her statutory damages in the amount of $1,000.
*20 Court costs
{¶ 23} Kesterson is not, however, entitled to an award of court costs. On the dates she made her public-records request and filed her mandamus complaint, the applicable version of the Public Records Act allowed for an award of court costs only "[i]f the court issues a writ of mandamus that orders the public office * * * to *894 comply with division (B) of this section." R.C. 149.43(C)(2)(a). Accordingly, because we hold that Kesterson's mandamus claim is moot, we deny her request for court costs.
Attorney fees
{¶ 24} The plain and unambiguous language of the applicable version of R.C. 149.43(C)(2)(b)(i) requires an award of reasonable attorney fees when the public office or person responsible for the public-records failed to timely respond, pursuant to R.C. 149.43(B), to the public records request ("The court shall award reasonable attorney's fees * * * when * * * [t]he public office or person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under division (B)" [emphasis added] ). An award of attorney fees pursuant to R.C. 149.43(C)(2)(b)(i) is not dependent upon the court having issued a judgment that orders compliance with the public-records law. See also R.C. 149.43(C)(3)(b)(i)[4] (court may award attorney fees if the court renders a judgment that orders the public office to comply with R.C. 149.43(B) or if the court determines the public office failed to timely respond to the request). The award of reasonable attorney fees is subject to reduction pursuant to R.C. 149.43(C)(2)(c).
{¶ 25} An award of reasonable attorney fees is appropriate under R.C. 149.43(C)(2)(b)(i) because Kent State violated R.C. 149.43(B) when it failed to produce all responsive records until November 9, 2016, more than six months after Kesterson filed this action. The court will make a final determination of the amount of attorney fees upon review of Kesterson's filing of an itemized application with independent evidence supporting the reasonableness of the hourly rates charged and the hours billed. The statutory guidelines in R.C. 149.43(C)(2)(c) will aid the court in determining the amount of fees to be awarded. Kesterson must demonstrate that she is entitled to an award of fees that is "reasonable" and "remedial." Id. Specifically, the itemized billing statements should only reflect time spent on the public-records request, mandamus action, and the proof of entitlement to and reasonableness of the requested fees. Id. Kent State is entitled to respond to Kesterson's application, and this court, applying R.C. 149.43(C)(2)(c), could reduce the attorney fees if it finds that a "well-informed *21 public office or person responsible for the requested public records reasonably" would believe the conduct "did not constitute a failure to comply" with a statutory obligation and that such conduct would "serve the public policy [underlying] the authority that [was] asserted as permitting that conduct." R.C. 149.43(C)(2)(c)(i) and (ii) ; see Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 37.
{¶ 26} Any person submitting an application for attorney fees should note that "fee applications submitted to this court should contain separate time entries for each task, with the time expended on each task denoted in tenths of an hour" and that "this court will no longer grant attorney-fee applications that include block-billed time entries." State ex rel. Harris v. Rubino , --- Ohio St.3d ----, 2018-Ohio-5109, --- N.E.3d ----, ¶ 7, 14.
Conclusion
{¶ 27} Kesterson has not shown by clear and convincing evidence that Kent State has failed to fully respond to her February *895 2016 records request. Therefore, she has not established her entitlement to the requested extraordinary relief in mandamus, and we deny the writ. We also deny her request for costs. However, because Kent State failed to timely produce some of the responsive records, we award statutory damages to Kesterson under R.C. 149.43(C)(1) in the amount of $1,000 and grant her request for reasonable attorney fees.
Judgment accordingly.
French, DeWine, and DeGenaro, JJ., concur.
O'Connor, C.J., concurs in part and dissents in part, and would deny the writ and award statutory damages, but would deny relator's request for fees and costs.
Fischer, J., concurs in part and dissents in part, and would deny the writ but would not award statutory damages, and would deny relator's request for fees and costs.
O'Donnell, J., dissents and would grant the writ and would grant relator's request for fees and costs.

This provision is now found in R.C. 149.43(C)(2) of the current Public Records Act.

These provisions are found in R.C. 149.43(C)(2)(a) and (b) of the current Public Records Act.

This reference is to the current Public Records Act, effective November 2, 2018. This statutory amendment was originally adopted in 2016 Am.Sub.S.B. No. 321.