**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Cincinnati,* Slip Opinion No. 2019-Ohio-3876.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3876

THE STATE EX REL. CINCINNATI ENQUIRER, A DIVISION OF GANNETT GP MEDIA, INC. *v.* THE CITY OF CINCINNATI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Cincinnati,* Slip Opinion No. 2019-Ohio-3876.]**

*Mandamus—Public records—R.C. 149.43—Exemption for confidential law-enforcement investigatory records—City's redactions in videos were proper—Writ of mandamus denied because city provided requested body-camera videos—City did not act in good faith when it voluntarily released videos after mandamus action was commenced but before court issued an order concluding whether records should have been dismissed—Request for reasonable attorney fees and costs granted.*

(No. 2017-1618—Submitted May 21, 2019—Decided September 26, 2019.)

IN MANDAMUS.

_____

**FISCHER, J.**

{¶ 1} In this case, relator, the Cincinnati Enquirer ("the Enquirer"), seeks a writ of mandamus and an award of attorney fees and costs against respondent, the city of Cincinnati, in connection with a request for body-camera footage. For the reasons set forth below, we deny the request for a writ of mandamus but grant an award of attorney fees and court costs.

## I. Factual and Procedural Background

{¶ 2} On August 8, 2017, while on duty and responding to a service call, Cincinnati police officers arrested Richard Coleman and James Crawley. Coleman and Crawley resisted, and the officers used a Taser to subdue the two men. Coleman and Crawley were charged with resisting arrest under R.C. 2921.33 and other offenses.

{¶ 3} Pursuant to Cincinnati Police Procedure 12.540, the officers were wearing body cameras during the incident. On October 31, 2017, James Pilcher, a reporter for the Enquirer, requested public records, including the body-camera footage, from the police department. On November 2, 2017, the city denied the records request on the basis of R.C. 149.43(A)(1)(h), which provides an exception to the disclosure of public records that are "confidential law enforcement investigatory records" ("CLEIRS").

{¶ 4} On November 14, 2017, the Enquirer filed this original action for a writ of mandamus. On February 28, 2018, this court granted an alternative writ of mandamus, established a schedule for the presentation of briefs and evidence, and ordered the city to submit the body-camera videos to the court under seal. 152 Ohio St.3d 1402, 2018-Ohio-723, 92 N.E.3d 874. The city complied with this directive, and the parties filed briefs and evidence. The Enquirer also filed an unopposed motion for oral argument, which we granted. 154 Ohio St.3d 1507, 2019-Ohio-470, 116 N.E.3d 1287. Following oral argument, we ordered the city to submit supplemental evidence to show whether the responding officers were acting in a

capacity under which their identities could be exempted from disclosure. 155 Ohio St.3d 1465, 2019-Ohio-2012, 122 N.E.3d 1287. With briefing now completed, we proceed with our decision.

## II. Analysis

{¶ 5} In its complaint, the Enquirer sought a writ of mandamus and alleged that "[t]o date, [the police department] has refused to provide access to the Body-Cam Footage in any form." On December 1, 2017, 17 days *after* the complaint was filed, the city provided the body-camera footage to Pilcher, in the form of 19 videos. As it noted in its brief, the city redacted videos to obscure the faces of plainclothes officers who appear in the footage. During oral argument, counsel for the Enquirer made clear that it was challenging the decision to obscure the faces, prompting counsel for the city to request the opportunity to submit additional evidence to justify the redactions. In response to our request for supplemental evidence, the city submitted the affidavit of Cincinnati Assistant Police Chief Teresa Theetge, who attested that the plainclothes officers who appear in the footage operate in a covert capacity, both as surveillance and undercover officers, and that if the faces of those officers are disclosed, those officers will be less useful as covert units and subject to an increased risk of harm.

### A. The Enquirer is not entitled to a writ of mandamus

{¶ 6} Mandamus is the appropriate remedy by which to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. Exceptions to disclosure under the act are strictly construed against the records custodian, who has the burden to establish the applicability of any claimed exception from disclosure. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10.

**{¶ 7}** A "public record," under the Public Records Act, does not include "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). Constitutional privacy rights are "state or federal law" for purposes of the Public Records Act. *See State ex rel. Keller v. Cox*, 85 Ohio St.3d 279, 282, 707 N.E.2d 931 (1999) (personal information in police officers' personnel files is exempt from disclosure).

**{¶ 8}** Police officers "have a fundamental constitutional interest in preventing the release of private information when disclosure would create a substantial risk of bodily harm, and possibly even death, 'from a perceived likely threat.' " *State ex rel. Cincinnati Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, ¶ 14, quoting *Kallstrom v. Columbus*, 136 F.3d 1055, 1064 (6th Cir.1998). In *Craig*, this court affirmed the court of appeals' judgment that the city did not have to disclose the names and identifying information of officers wounded in a shootout, because the evidence established that disclosure would create just such a threat of harm. *Id.* at ¶ 22-23. *See also State ex rel. Cincinnati Enquirer v. Streicher*, 1st Dist. Hamilton No. C-100820, 2011-Ohio-4498, ¶ 32-33 (noting that police officers' interest in protecting themselves and their families from bodily harm outweighs the public interest in uncovering the identity of officers involved in certain incidents).

**{¶ 9}** The Theetge affidavit establishes that the officers who appear in the videos operate in a covert capacity and that they might therefore be at risk of harm if their identities are publicly disclosed. A risk of harm need not be immediate or specifically identifiable in order to prevent disclosure. *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 371-372, 725 N.E.2d 1144 (2000) (disclosure of photo-identification-program database would create general risk of harm to children who use municipal recreation facilities).

**{¶ 10}** The Enquirer did not file a response to Theetge's affidavit. It did not challenge the assertion that the officers would be at risk if their identities became

4

known, and it also did not argue that revealing the officers' faces would not disclose their identities. The city's evidence is uncontradicted.

{¶ 11} We accordingly conclude that the redactions were proper. Because the city has otherwise provided the body-camera footage to Pilcher, we deny the Enquirer's request for a writ of mandamus as moot.

**B. The Enquirer is entitled to reasonable attorney fees and court costs**

{¶ 12} Under prior iterations of the Public Records Act, the issuance of a writ of mandamus was a prerequisite for an award of attorney fees. *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 18. In 2016, the General Assembly enacted Sub.S.B. No. 321, which amended R.C. 149.43(C)(3)(b). The Public Records Act now authorizes a court to award fees even when it has not granted a writ, so long as the court makes any one of three factual determinations. Relevant to this case, fees may be awarded if the court finds that the public office or official responsible for the records "acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not" the records should have been produced. R.C. 149.43(C)(3)(b)(iii). Furthermore, if the court finds that the public office or official responsible for the records acted in bad faith pursuant to R.C. 149.43(C)(3)(b)(iii), "the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive." R.C. 149.43(C)(3)(a)(ii).

{¶ 13} The city admits that five of the videos from the body cameras contain nothing of investigative value and should have been produced. Because the withheld videos "show nothing more than police officers driving," the city suggests that its failure to produce those videos proves its good faith because it was not acting to conceal something of public significance. But that point cuts both ways: if those five videos were so plainly lacking in investigative value, then the city's

failure to produce them suggests the possibility that the city never bothered to review any of the videos to see what they contained. Thus, the claim that it acted in good faith is more dubious. The city specifically denied the record request on November 2, 2017, claiming a CLEIRS exception. This raises a question of whether the city even reviewed the videos before asserting that exception.

{¶ 14} In opposing the request for attorney fees, the city asks the court to consider how time intensive it was to review videos from 19 body cameras. But there is no evidence that the city ever undertook such a review, or that the pace of review had anything to do with the timing of the release of the videos. In fact, the city's explanation of events contradicts the suggestion that it undertook any inquiry to see whether portions of the videos could be released.

{¶ 15} The city also suggests that it was justified in denying the Enquirer's public-records request due to proceedings in a separate lawsuit. The city submitted evidence that Crawley had filed an excessive-use-of-force complaint against the arresting officers with the Cincinnati Citizens Complaint Authority ("CCA"). In response to that complaint, Hamilton County Prosecutor Joseph Deters filed suit against the CCA to prevent it from conducting any hearings prior to completion of the criminal prosecutions. *State ex rel. Deters v. Citizens Complaint Auth.*, Hamilton C.P. No. A-1705604. On October 30, 2017, Hamilton County Common Pleas Court Judge Steven Martin entered a temporary restraining order ("TRO") enjoining CCA from conducting interviews. The city submitted the affidavit of Kathleen Brackett, an employee in the Cincinnati Police Department's Records Section, with its brief. In that affidavit, Brackett stated that "[b]ecause the trial court granted the temporary restraining order to protect investigatory work product, [she] recommended that the Enquirer's public record request be denied."

{¶ 16} This argument fails for two reasons. First, this court ordered the parties to submit "any evidence they intend to present" no later than March 20, 2018. 152 Ohio St.3d 1402, 2018-Ohio-723, 92 N.E.3d 874. But the city failed to

6

proffer the affidavit until May 29, 2018, more than two months *after* the court-ordered deadline, and it did not seek leave of court to do so. Second, Judge Martin's TRO and Brackett's affidavit do not help the city. Brackett's statement that she advised the city not to release the videos in the interest of "protect[ing] investigatory work product" merely begs the question why the city withheld *all* the videos, including those it now concedes had no investigatory relevance or value.

{¶ 17} For these reasons, we conclude that the city did not act in good faith in voluntarily releasing the videos to the Enquirer for the first time *after* the Enquirer commenced the mandamus action but before this court issued an order concluding whether the records should have been produced. We grant the Enquirer's request for an award of reasonable attorney fees. In addition, having found that the city did not act in good faith pursuant to R.C. 149.43(C)(3)(b)(iii), we grant the Enquirer's request for court costs.

{¶ 18} We will make a final determination of the amount of attorney fees upon the Enquirer's filing of briefs and evidence detailing its attorney fees, including evidence establishing the actual hours expended, the reasonableness of the hours, and the reasonableness of the hourly rates charged by the attorneys. *See State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 25-26. The city may file a response to the Enquirer's application. *Id.* at ¶ 25.

### III. Conclusion

{¶ 19} Because the city provided the requested body-camera videos, and because the city's redactions were proper, we deny the Enquirer's request for a writ of mandamus. However, because the city did not act in good faith when it voluntarily released the videos to the Enquirer for the first time after the Enquirer commenced the mandamus action but before this court issued any order concluding whether the records should have been produced, we grant the Enquirer's request for reasonable attorney fees and costs.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Graydon, Head & Ritchey, L.L.P, John C. Greiner, and Darren W. Ford, for relator.

Paula Boggs Muething, Cincinnati City Solicitor, Peter J. Stackpole, Deputy City Solicitor, and L. Drew Marksity, Assistant City Solicitor, for respondent.

Faruki, Ireland, Cox, Rhinehart & Dusing, P.L.L., Erin E. Rhinehart, and Christopher C. Hollon, in support of relator for amicus curiae Ohio Coalition for Open Government.

_____