[Cite as *State ex rel. Ware v. Stone*, 2022-Ohio-1151.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO, ex rel.<br>KIMANI E. WARE | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. Patricia A. Delaney, J. |
| Relator | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2021CA00042 |
| KYLE L. STONE, PROSECUTOR, et al. | O P I N I O N |
| Respondents | |


CHARACTER OF PROCEEDING:          Writ of Mandamus


JUDGMENT:          Dismissed


DATE OF JUDGMENT ENTRY:          April 4, 2022


APPEARANCES:

For Relator                                        For Respondents

KIMANI E. WARE                          KYLE L. STONE
PRO SE                                        PROSECUTING ATTORNEY
Trumbull Correctional  Institution    DAVID E. DEIBEL
Leavittsburg, Ohio  44430            ASSISTANT PROSECUTOR
                                                  110 Central Plaza South, Suite 510
                                                  Canton, Ohio  44702

*Wise, P. J.*

{¶1}   On April 14, 2021, Relator Kimani Ware filed a Complaint for Writ of Mandamus against Respondents, John D. Ferrero and the Stark County Prosecutor's Office.[1] Ware seeks to compel the prosecutor to provide documents in response to public-records requests. We grant the prosecutor's Motion for Summary Judgment, deny Ware's Motion for Summary Judgment and deny his request for statutory damages and court costs.

## I.  Background

{¶2}   Ware alleges on May 18, 2020, he served two public-records requests by certified mail upon the Stark County Prosecutor's Office. Having received no response, on April 14, 2021, Ware filed this mandamus action requesting that we issue a writ of mandamus ordering the prosecutor to respond to his two public-records requests and award him statutory damages and court costs.

{¶3}   In response to the filing of the writ, the prosecutor filed a Motion to Dismiss. Attached to the motion was an affidavit from an assistant prosecutor who indicated he could not locate any record of Ware's public-records requests having been received by the prosecutor's office. Rather, the prosecutor's office first became aware of Ware's public-records requests on April 20, 2021, when it was served with a copy of the writ. The assistant prosecutor further averred that he compiled 972 pages of documents responsive to Ware's requests.

---

[1] On May 4, 2022, the prosecutor's office filed a notice of substitution indicating Prosecutor Kyle L. Stone replaced Prosecutor Ferrero.

**{¶4}** On May 12, 2021, the assistant prosecutor sent Ware a letter by certified mail, along with a copying fee invoice for $97.20, informing him that he must first pay the copying fee. Upon receipt of the copying and postage fees, the prosecutor's office would send the requested records to Ware. Ware received the assistant prosecutor's letter on May 15, 2021.

**{¶5}** Because the prosecutor's Motion to Dismiss incorporated an affidavit and other exhibits of an evidentiary nature, on May 24, 2021, the Court issued a Judgment Entry converting the prosecutor's Motion to Dismiss to a summary judgment motion. The entry included a schedule for briefing and the submission of additional Civ.R. 56(C) evidence. Without leave of court, Ware filed a Motion for Summary Judgment on June 1, 2021.

**{¶6}** On this same date, Ware also filed a Reply to Respondent's (sic) Motion to Dismiss. Ware argued even if the public-records requests are moot, he is still entitled to statutory damages and court costs. On June 21, 2021, the prosecutor filed a Reply to Relator's Response to Respondent's Motion for Summary Judgment and Memorandum in Opposition to Relator's Motion for Summary Judgment. The assistant prosecutor attached an affidavit indicating Ware had a factually similar appeal pending in the Ohio Supreme Court, *State ex rel. Ware v. Crawford*, Case No. 2020-1498.

**{¶7}** On June 23, 2021, the Court granted Ware leave to file his summary judgment motion. The Court further granted both parties additional time to submit Civ.R. 56(C) evidence in support of their respective summary judgment motions. Finally, the Court stayed the issuance of its decision herein to await the Supreme Court's decision in *Crawford*.

**{¶8}** In the meantime, Ware filed a Notice Upon the Court on July 2, 2021 advising he issued a check in the amount of $97.20 to the prosecutor's office for the copying fee. On July 6, 2021, Ware filed a Motion for an Extension of Time to Fully Comply with Civ.R. 56(C). Ware indicated he needed the additional time to provide evidence to this Court that Mr. Cimmento, a mail clerk screener at Trumbull Correctional Institution, committed perjury in the affidavit he submitted to the Ohio Supreme Court in the *Crawford* case. On August 11, 2021, we granted Ware's motion and gave the parties an additional fourteen days to submit Civ.R. 56(C) evidence.

**{¶9}** On July 7, 2021, Ware filed a Motion for Judicial Notice Pursuant to Evid.R. 201(D) and (E). We denied the motion by Judgment Entry filed on August 11, 2021. Thereafter, the prosecutor submitted additional Civ.R. 56(C) evidence on July 9, 2021. The evidence consisted of Affidavits from Olivia Jennings and Frank Cimmento, Jr., both mail clerk screeners at Trumbull Correctional Institution. On August 2, 2021, Ware filed a Notice Upon the Court this time indicating he submitted payment of $97.20 for payment of the copying fee and that he had not yet received the records.

**{¶10}** On August 24, 2021, Ware submitted his Civ.R. 56(C) evidence. It consisted of his own affidavit, a request for a copy of the procedure in place at Trumbull Correctional Institution for inmates to send mail, copies of OAC 5120-9-17 and OAC 5120-9-18, and an opinion in *Jamarr R. Stone, Sr. v. Ohio Parole Board, et al.*; S.D.Ohio No. 2:21-cv-884, 2021 WL 1222141 (Mar. 31, 2021). On October 5, 2021, Ware filed a Motion for Judicial Notice. Ware indicated he had not received the requested records. In an affidavit submitted with his motion, Ware stated, "It has been over a year worth of business days (i.e. 365 days) since stark (sic) co. (sic) prosecutor's (sic) office received

my public records (sic) by certified mail. I have suffered an injury cause (sic) by the lost use of the requested public records." *See* Affidavit of Kimani Ware, Oct. 5, 2021, at ¶ 5.

{¶11} On October 12, 2021, Ware filed a Notice Upon the Court. He indicated that he received 380 pages of public records, 198 "black" pages with no content, and 394 "white" pages with no content. Ware asked this Court to issue an order compelling the prosecutor's office to refund $59.20 and provide him with a copy of its public-records policy and records-retention schedule.

{¶12} On November 8, 2021, the Court issued a Judgment Entry denying Ware's Motion for Judicial Notice. The Court relied on a May 12, 2021 letter from the prosecutor's office to Ware that was attached to the prosecutor's Motion to Dismiss. In it, the assistant prosecutor indicated he prepared the documents responsive to Ware's request with the exception of an equal employment opportunity policy and anti-nepotism policy because there were no documents responsive to these requests. The assistant prosecutor repeated this information in an affidavit attached to this same motion as Exhibit 2.

{¶13} On February 8, 2022, the Ohio Supreme Court issued its decision in *Crawford*. Thereafter, based on the *Crawford* decision we issued a Judgment Entry on March 1, 2022 vacating the previous Judgment Entry we issued on November 8, 2021. We instructed the prosecutor's office to corroborate the assistant prosecutor's assertion, in his affidavit, that he produced all of the documents that Ware requested by submitting copies of the Stark County Prosecutor's public-records policy and records-retention schedule that were previously provided to Ware. On May 14, 2022, the prosecutor's office complied by filing an affidavit with copies of the alleged missing documents

attached as exhibits. The affidavit again confirms these documents were previously provided to Ware.

## II. Analysis

### A. Mandamus elements and summary judgment standard

{¶14} Ohio's Public Records Act requires a public office to make copies of public records available to any person on request and within a reasonable period of time. R.C. 149.43(B)(1). *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 9. The Ohio Supreme Court construes the Public Records Act "'liberally in favor of broad access' " to public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶15} Under R.C. 149.43(C)(1)(b), a mandamus action is the remedy for a person denied access to a public record. "To prevail on a claim for mandamus relief in a public-records case, a party must establish a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondents to provide that relief." *State ex rel. Penland v. Ohio Dept. of Rehabilitation and Correction*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 9, citing *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 22-24.

{¶16} Further, we are deciding this matter on summary judgment. A court may grant summary judgment, under Civ.R. 56 if it determines: (1) no genuine issues as to any material fact remain to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against

whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). The record on summary judgment must be viewed in the light most favorable to the party opposing the motion. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151, 309 N.E.2d 924 (1974).

**{¶17}** The moving party bears the initial responsibility of identifying the basis for the motion and those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party has met the burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of facts exists." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

### B. Public-records requests

**{¶18}** Ware filed this writ to compel the prosecutor to respond to his public-records requests. Twenty-two business days after receiving a copy of the Complaint for Writ of Mandamus, the prosecutor's office responded by letter indicating 972 pages of information was responsive to Ware's requests at a copying fee of $97.20, with postage to be determined. The letter also identified two policies that could not be provided because they do not exist.

**{¶19}** Ware admits in his October 12, 2021 "Notice Upon the Court" that he received all 972 pages the prosecutor indicated were responsive to his public-records requests. Further, the assistant prosecutor confirmed in his affidavit that he compiled all

of the public records that were responsive to Ware's requests. *See* Motion to Dismiss, May 18, 2021, Exhibit 2, ¶ 5. However, Ware claimed in his October 12 notice that he did not receive a copy of the Stark County Prosecutor's public-records policy or its records-retention schedule.

**{¶20}** On March 1, 2022, this Court filed a Judgment Entry vacating a previous Judgment Entry and instructing the prosecutor's office under *State ex rel. Ware v. Crawford*, _____ Ohio St.3d _____, 2022-Ohio-295, _____ N.E.3d _____, to "corroborate the assistant prosecutor's assertion, in his affidavit, that he produced all of the documents that Ware requested by submitting copies of the Stark County Prosecutor's public records policy and records retention schedule that were previously provided to Ware."

**{¶21}** *Crawford* required such action because the Ohio Supreme Court explained the records custodian or public agency is "in the superior position to demonstrate compliance with the obligation to provide copies of public records." *Id.* at ¶ 15. The *Crawford* court imposed $1,000 in statutory damages because "[the records custodian] present[ed] no evidence [beyond her affidavit] to corroborate her assertion that she mailed the documents that [the requester] requested, nor ha[d] she submitted copies of the documents that she claims to have sent to [the requester] in response to his * * * request. *Id.*

**{¶22}** On March 14, 2022, the assistant prosecutor filed an affidavit. He indicated the two exhibits attached to his affidavit are the public-records policy and records-retention schedule he previously provided to Ware in the 972 pages of documents produced in response to Ware's two public-records requests.

**{¶23}** Finally, we note Ware's notice does not challenge the propriety of the redactions (the black pages and blank, white pages) only that he should not have to pay for pages that contain no information. We reject this argument because "R.C. 149.43 does not require a public-records custodian to provide copies of records free of charge; instead, the Public Records Act requires only that copies of public records be made available at cost." (Citations omitted.) *State ex rel. Call v. Fragale*, 104 Ohio St.3d 276, 2004-Ohio-6589, 819 N.E.2d 294, ¶ 6.

**{¶24}** Therefore, we conclude the prosecutor provided all of the records that are responsive to Ware's two public-records requests, excluding two policies that do not exist. The prosecutor's office has no duty to create or provide access to nonexistent records." *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶15. Because Ware received all of the responsive documents he requested his mandamus complaint is moot. *See McDougald,* 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, at ¶ 10. *See also State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info., Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8 ("In general, the provision of requested records to a relator in a public-records mandamus case renders the mandamus claim moot.")

*C. Statutory damages*

**{¶25}** However, a relator may receive an award of statutory damages even if he or she does not prevail on the mandamus claim where the respondent took an unreasonable length of time to produce the records. *McDougald* at ¶ 13. *See also State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 22. A requester qualifies for statutory damages, under the version of R.C. 149.43

in effect at the time the request is made[2] only when he or she "transmits a written request [for the public records] by hand delivery, electronic submission, or certified mail * * * to the public office or person responsible for the requested public records[.]" R.C. 149.43(C)(2).

{¶26} A person who requests public records is entitled to an award of statutory damages "if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section." *Id*. "Statutory damages shall be awarded 'when a court determines that the public office failed to comply with an obligation to provide access to the records.' " *McDougald* at ¶ 13, quoting *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 23.

{¶27} In his affidavit attached to the Motion to Dismiss, the assistant prosecutor indicated he "could not locate any record of Relator's alleged May 18, 2020 public-records requests having come into this office." *See* Motion to Dismiss, May 18, 2021, Exh. 2, ¶ 4. This is critical because to be entitled to statutory damages a public-records request must be delivered by hand delivery, electronic submission or certified mail to the public office or person responsible for the requested public records.

{¶28} In a subsequent affidavit attached to the prosecutor's reply in support of his Motion for Summary Judgment and memorandum in opposition to Ware's summary judgment motion, the assistant prosecutor further stated he did not believe Ware sent the May 18, 2020 public-records requests to the prosecutor's office and that Ware filed

---

[2] *See State ex rel. Cordell v. Paden,* 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179.

the Complaint for Writ of Mandamus solely in an effort to obtain monetary damages from the prosecutor's office. *See* Reply, June 21, 2021, Exh. 1, ¶ 11, 12.

**{¶29}** In further support of the prosecutor's claim that he did not receive the public-records requests by certified mail, the prosecutor submitted Civ.R. 56(C) evidence consisting of the affidavits of Olivia Jennings and Frank Cimmento, Jr. Jennings and Cimmento are employed at Trumbull Correctional Institution as mail clerk screeners. Both Jennings and Cimmento opined the tracking number of a certified mail item is not known until the certified slip is retrieved from stock and affixed to a *sealed* envelope. The person sending the certified mail would not know the tracking number until he or she receives a carbon copy of the cash slip from the Cashier's Office, with the tracking number indicated on the bottom of the slip. Once the sealed envelope is received by the mail room, it is never returned to the inmate unless the Cashier's Office denies the request for postage due to insufficient funds.

**{¶30}** As such, there was no way for Ware to include the tracking number on the two public-records requests that he allegedly sent by certified mail to the prosecutor's office. Yet, attached to Ware's Complaint for Writ of Mandamus, as Exhibits B and C, are copies of the two alleged public-records requests, dated May 11, 2020, with hand-written tracking numbers indicated in the Certificates of Service. Ware was given an opportunity to rebut Jennings's and Cimmento's affidavits. However, the only evidence he submitted consisted of his own affidavit, a request for a copy of the procedure in place at Trumbull Correctional Institution for inmates to send mail, OAC 5120-9-17, OAC 5120-9-18, and an opinion in *Jamarr R. Stone, Sr. v. Ohio Parole Board, et al.*; S.D.Ohio No. 2:21-cv-884, 2021 WL 1222141 (Mar. 31, 2021).

**{¶31}** OAC 5120-9-18 actually supports the prosecutor's argument because section (E) requires inmates to "seal their own first class letters, except in instances where there is to be an enclosure of money or documents held by the institution." Thus, the two public-records requests attached as exhibits to Ware's Complaint for Writ of Mandamus could not have been in the certified mail envelope he sent to the prosecutor's office. There was no way for Ware to know the tracking number at the time he sealed the envelope and he has not submitted Civ.R. 56(C) evidence proving otherwise.

**{¶32}** The Ohio Supreme Court addressed a similar factual dispute in the *Crawford* case. In that case, Ware filed a writ of mandamus claiming he did not receive certain records he requested by certified mail from Crawford, an inspector with the prison's office of institutional services. *Crawford*, ____ Ohio St.3d ____, 2022-Ohio-295, ____ N.E.3d ____, at ¶ 1.

**{¶33}** The Ohio Supreme Court reviewed the affidavit of Frank Cimmento, Jr., which alleged identical facts as those contained in Cimmento's affidavit submitted by the prosecutor's office in the present matter. The Court concluded Ware failed to rebut Cimmento's key point that the certified-mail tracking number is unknown to the inmate until *after* the envelope containing the mailed items is sealed. *Id.* at ¶ 21. The Court further noted Ware does not explain how he could have written the certified-mail tracking number on his public-records requests when the requests would have been sealed in an envelope before the number was assigned. *Id.* The Court concluded Ware did not prove by clear and convincing evidence that he sent the public-records requests. *Id.* at ¶ 22.

**{¶34}** Likewise, here, Ware submitted no clear and convincing evidence to establish how he knew the certified-mail tracking number so he could include it on his

public-records requests prior to sealing the envelope and sending it to the prosecutor's office. Although an item of certified mail was delivered to the prosecutor's office on May 18, 2020, Ware has not established by clear and convincing evidence that it was the two public-records requests he attached to his Complaint for Writ of Mandamus as Exhibits B and C.

**{¶35}** Therefore, Ware never transmitted written public-records requests "to the public office or person responsible for the requested public records" by hand delivery, electronic submission or certified mail as required by R.C. 149.43(C)(2). Instead, on May 18, 2020, he served the prosecutor's office by certified mail with an envelope and thereafter, served by certified mail a Complaint for Writ of Mandamus with the two public-records requests attached as Exhibits B and C.

**{¶36}** R.C. 149.43(C)(2) does not indicate public-records requests may be made by serving them as part of a mandamus action – even if the mandamus action is served on the public office or person responsible for the public records by certified mail. Having failed to comply with the mandates of R.C. 149.43(C)(2), we conclude Ware is not entitled to statutory damages. *See, e.g., McDougald*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, at ¶18 ("Because the prison's kite system more closely resembles an insufficient form of delivery – i.e., regular U.S. mail delivery – we hold that delivery of a public-records request through a prison's kite system does not qualify a requester for an award of statutory damages under R.C. 149.43(C)(2).")

**{¶37}** Even if we were to conclude that Ware complied with R.C. 149.43(C)(2) by delivering the public-records requests by certified mail, a delay of 48 business days in producing the requested records, after he paid shipping costs, does not entitle Ware to

statutory damages. R.C. 149.43(C)(2) imposes statutory damages at the rate of $100 "for each business day during which the public office * * * failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files the mandamus action to recover statutory damages, up to a maximum of one thousand dollars."

**{¶38}** R.C. 149.43(B) requires the production of all responsive records "within a reasonable period of time." Statutory damages may be awarded if the public record is not promptly provided. *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 22; R.C. 149.43(C)(2). The "reasonable period of time" standard is not defined in the Public Records Act, but "the determination of what is 'reasonable' depends upon all the pertinent facts and circumstances." (Citations omitted.) *Deters* at ¶ 23. "R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials." *Kesterson*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, at ¶ 16, citing *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994).

**{¶39}** Here, the prosecutor's office produced the requested records within 118 business days of being served with the Complaint for Writ of Mandamus. On May 12, 2021, less than a month after being served with the complaint, the prosecutor's office sent a letter to Ware enclosing a $97.20 invoice for copies of the requested public records. The letter further indicated that upon receipt of the funds for the copies, the prosecutor's office would prepare the documents for shipping and send Ware an invoice

for the shipping costs. Upon receipt of the amount owed for shipping, the prosecutor's office would then send the requested documents.

{¶40} In an affidavit filed on October 5, 2021, Ware indicated on June 28, 2021, he paid $97.20 for the copies. On July 30, 2021, Ware paid $28.65 for shipping the copies. On October 6, 2021, Ware received 972 pages of the requested public records, within 48 business days of paying the postage. We find the prosecutor's office produced the records within a reasonable period of time and therefore, Ware is not entitled to statutory damages.

{¶41} Ware made broad record requests asking for five personnel files and five office policies. The requests totaled 972 pages of documents and required substantial redaction, which Ware acknowledged in his Notice Upon the Court filed on October 12, 2021 wherein he indicated he received a total of 592 blank pages. R.C. 149.43(B)(1) allows a public office to examine records prior to inspection in order to make appropriate redactions of exempt materials. *Warren Newspapers, Inc.*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174.

{¶42} Further, delay times were necessitated in this matter because Ware is incarcerated and he had to pre-pay the copying fee (R.C. 149.43(B)(6)) and shipping fee (R.C. 149.43(B)(7)(a)). According to Ware, he paid the shipping fee on July 30, 2021, and received the requested records 48 business days later.

{¶43} In concluding Ware is not entitled to statutory damages, we find the Ohio Supreme Court's decision in *State ex rel. Stuart v. Greene*, 161 Ohio St.3d 11, 2020-Ohio-3685, 160 N.E.3d 709, ¶ 8, to be persuasive authority. In *Stuart*, the Court declined to award statutory damages where it took 31 days to produce an 18-page document with

substantial redaction. *Id.* The Court explained, "Stuart has suggested no reason why the amount of time that it took for Greene to prepare the record was unreasonable nor has he suggested what a more reasonable response time might have been." *Id.* The Court declined to award statutory damages. *See also State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171 (response time of 31 business days found to be reasonable); *State ex rel. Ware v. DeWine*, 163 Ohio St.3d 332, 2020-Ohio-5148, 170 N.E.3d 763 (response time of 36 business days found to be reasonable.)

**{¶44}** Based on the above caselaw, we conclude the delay of 48 business days, after Ware paid shipping costs, to produce 972 pages of public records, is reasonable. The requested records contain substantial redactions. Further, as in *Stuart*, Ware neither suggested why the length of time it took the prosecutor's office to prepare the records is unreasonable nor indicated what a more reasonable time period would have been.

**{¶45}** For these reasons, even if we conclude Ware delivered his two public-records requests to the prosecutor's office by certified mail on May 18, 2020, he has not established the 48 business-day delay was unreasonable. Therefore, he is not entitled to statutory damages.

### D. Court costs

**{¶46}** Although we are not granting a writ of mandamus ordering the prosecutor's office to produce records, court costs may still be awarded under R.C. 149.43(C)(3)(a)(ii), which states: "If the court makes a determination described in division (C)(3)(b)(iii) of this section, the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive."

**{¶47}** R.C. 149.43(C)(3)(b)(iii) provides:

The public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the public office or person was required to comply with division (B) of this section. No discovery may be conducted on the issue of the alleged bad faith of the public office or person responsible for the public records. This division shall not be construed as creating a presumption that the public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order described in this division.

**{¶48}** Ware moved for summary judgment on the issue of court costs. He argued the prosecutor's office did not promptly make the public records available to him and it could have provided him with an invoice for the cost of copying the records but failed to do so. Ware concluded the prosecutor's office failed in the duty it owed him.

**{¶49}** R.C. 149.43(C)(3)(b)(iii) does not create a presumption the person responsible for retrieving the public records acted in bad faith when he or she makes the records available to the requester for the first time after the requester files a petition for a writ of mandamus but before a court issues a writ. *McDougald*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, at ¶ 25. " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d

233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. The term "bad faith" encompasses "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Citations omitted.) *Tate* at ¶ 13.

**{¶50}** Ware has not alleged any facts suggesting the prosecutor's office acted in bad faith in handling his two public-records requests. The assistant prosecutor swore in an affidavit that Ware did not send the public-records requests to the prosecutor's office as Ware claimed. This is not a situation where the prosecutor's office received the public-records requests and ignored them. Once the prosecutor's office became aware of the requests, and received the required funds to make the copies and mail the requested documents, Ware received the requested records in 48 business days.

**{¶51}** Further defeating Ware's request for court costs is the fact that he cannot prove that he sent two public-records requests to the prosecutor's office on May 18, 2020. As explained by Olivia Jennings and Frank Cimmento, Jr., in their respective affidavits, there is no way Ware would have known the tracking number for the certified mail that he allegedly sent to the prosecutor's office.

**{¶52}** Because Ware has produced no evidence that the prosecutor's office received his two public-records requests when they were served with an envelope on May 18, 2020 and that the prosecutor's office acted in bad faith in failing to respond to them, we deny Ware's request for court costs.

### III. CONCLUSION

{¶53}  For the foregoing reasons, we deny Ware's writ of mandamus as moot. We also deny his Motion for Summary Judgment and grant the prosecutor's Motion for Summary Judgment. We deny Ware's request for statutory damages and courts costs. The clerk of courts is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58(B).

{¶54}  RELATOR'S MOTION FOR SUMMARY JUDGMENT DENIED.

{¶55}  RESPONDENT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.

{¶56}  CAUSE DISMISSED.

{¶57}  COSTS TO RELATOR.

{¶58}  IT IS SO ORDERED.


By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.


JWW/ac 0330